# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MATTHEW R. LINDNER, *et al.*,

    Plaintiffs,

v.

FORD MOTOR COMPANY, *et al.*,

    Defendants.

Case No. 2:10-cv-00051-LDG (VCF)

**ORDER**

Defendant Evenflo Company, Inc., moves for summary judgment due to lack of admissible evidence of a design defect (#56), which motion the plaintiffs (Matthew Lindner, individually, as surviving spouse and heir of Elsy Leticia Granados-Martinez, as surviving parent and legal heir of Camila Lynete Lindner, and as Guardian Ad Litem of Paulina Granados-Martinez) oppose (#57). Having considered the papers, pleadings, and admissible evidence, the Court will grant the motion.

<u>Standard of Review: Motion for Summary Judgment</u>

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim.  *Anderson,* 477 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the

evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Background

Evenflo makes the Embrace child restraint system: a rear-facing, two-piece child seat for use in vehicles. The two pieces of the system consist of the carrier and a convenience base. The convenience base is belted to the vehicle seat using the vehicle's seat belt. The carrier attaches to the convenience base pursuant to a three-point latching system. The carrier has a system of harness straps, buckle and anchors used to secure the infant, a carrying handle, and a release handle. The carrier is detached from the convenience base by depressing the release handle.

On August 14, 2008, Linder's seven-month old infant, Camila, died in a vehicle accident while secured in an Evenflo Embrace child restraint system. While driving down a divided highway, the driver fell asleep and lost control of the vehicle. The vehicle left the roadway, re-entered the road, crossed over to the median, rolled over multiple times, and eventually came to rest on its wheels, facing the opposite direction of its original travel. During the accident, the carrier detached from its convenience base and Camila, still secured in the carrier, was ejected from the vehicle.

Analysis

Lindner alleges, in his lawsuit against Evenflo, that the carrier detached from its base due to a design defect, "[s]pecifically, the Embrace's latching mechanism provided no countermeasures to prevent the release handle from being actuated during the subject rollover." Opposition at 4. Evenflo argues, and Lindner does not dispute, that each of Lindner's claims against Evenflo rests on the allegations that the Embrace was defectively designed and that this defective design was a proximate cause of Camila's injuries. Evenflo further argues, and Lindner does not dispute, that to maintain his claims Lindner must present expert testimony of the defective design and causation, as the complexity of

3

these issues is beyond common experience, and a lay juror would lack the necessary knowledge and experience to render a just and proper decision in the absence of expert testimony.

Finally, Evenflo argues that, while Lindner has designated experts, those experts do not offer *admissible* expert opinion evidence of the design defect and its causation of Camila's injuries.  Lindner counters Dr. Arthur Hoffman, his car seat expert, has provided substantial evidence that the carrier release handle is vulnerable to unintended unlatching during the dynamics of a rollover.  He further contends that John Smith, his biodynamics expert, has provided evidence that the carrier separated from the convenience base as a result of an unintended actuation of the release handle.

For the reasons set forth below, the Court concludes that the opinions of Lindner's experts are inadmissible.  As noted above, Lindner summarizes the opinion of Hoffman as a vulnerability to unintended unlatching during the dynamics of a rollover.  The summary is inaccurate because it is an overly broad characterization of Hoffman's proffered opinion.  Hoffman's written Preliminary Expert Report, his subsequent Lindner Case Summary, and his deposition testimony indicate a distinctly narrower opinion.  As stated in the Lindner Case Summary, "it is my professional engineering opinion that the inadvertent separation of the Evenflo Embrace infant carrier from the vehicle secured base was the result of the [child restraint system] impacting the right front passenger seat back at some point during the accidental rollover event.  If the detachment occurred when the vehicle and infant seat was [sic] inverted, the failure would have been aggravated by gravity, inertia and/or rotational acceleration forces."  As Hoffman further opined, "the Embrace [child restraint system] release handle, which directly faces the back of the driver or passenger front seat, is exposed and unprotected when the carry handle is in the 'stand' position."  As Hoffman testified in his deposition:

| | | |
|---|---|---|
| Question: | And it's my understanding that your opinion, as we sit here today, is that the red release handle made direct contact with some part of the front passenger seat and that caused the carrier to release from the base? | |
| Answer: | Yes. | |
| Question: | And you hold that opinion to a reasonable degree of – | |
| Answer: | Yes. | |
| Question: | – certainty? | |

Hoffman Deposition, pgs. 28 - 29.[1]

While Lindner generally asserts, in his opposition, that Hoffman "details his work and the basis for his expert opinion" in his Preliminary Expert Report and his Lindner Case Summary, Lindner does not specifically cite to any portion of either document.  By contrast, Evenflo extensively reviews and specifically cites to Hoffman's deposition testimony relevant to his stated opinion.  Hoffman testified:

| | |
|---|---|
| Answer: | So you know that this thing hit that seat at a lower level. |
| Question: | Okay, you know the carry handle, in your opinion, hit the seat back – |
| Answer: | I believe it did. |
| Question: | – at a low level.  I'm trying to find that picture. |
| Answer: | Uh-huh. |
| Question: | Here we go, it's Exhibit 9.  Okay. |
| Answer: | Yeah, it's down in this area. |
| Question: | Okay.  So – |
| Answer: | Now, this seat was probably askew some. |

---

[1]     Elsewhere in his deposition, Hoffman stated his opinion:
I believe the reason for that [the inadvertent separation of the carrier from the base] was the close proximity of the – the infant seat, the Embrace infant seat, to the – and the release handle of that seat being exposed to the passenger front seat.  I believe there was an impact of the child infant seat handle and the – the passenger front seat, which was also deformed and slightly reclined, and the handle was exposed, and that is what caused the inadvertent separation.

Hoffman Deposition, pg. 14.  He further testified:

But I think in this case and I think all of the evidence points to the seat – the infant seat release handle hitting the front seat, and the front seat also being deformed, and that combination caused the handle to be torn out of the child seat.

Hoffman Deposition, pg. 15.

5

| | | |
|---|---|---|
| Question: | All right.  Now, that crease or indentation that we see in Exhibit 9 doesn't appear to be the shape of this release – this zigzag release handle to me. | |
| Answer: | Well, it might have been this portion of it. | |
| Question: | Okay. | |
| Answer: | There's no question that something hit that seat.  I'm assuming it's this handle. | |
| Question: | I got you. | |
| Answer: | Doesn't really have to be that handle, because this handle is exposed. | |
| Question: | So do you really know exactly what portion of the interior – | |
| Answer: | No, I don't. | |
| Question: | – of the vehicle hit the release handle? | |
| Answer: | No, I do not.  I do know that typically on – these child seats impact the front seat on both the sled testing and the crash testing half of the times or almost half of the times that it's been tested.  So I think it's fairly likely. | |
| Question: | Well, the fact that some portion of the – I'm – certainly, I'm not going to bicker with you about the statistics, I'm not trying to say you're necessarily right about half the time, but it doesn't matter if the child seat, at some location other than the release handle, hits another portion of the interior of the vehicle.  In order to get the child seat to release, that release handle has to be depressed, right? | |
| Answer: | Yes, it's got nothing to do with the carry handle, as such. | |
| Question: | Do you have any statistics as to – from any test, as to how often a release handle, if ever, has impacted a front seat? | |
| Answer: | I have none. | |

Hoffman Deposition, pgs 188-190.  The Court has quoted this extensive portion of the deposition testimony because it establishes several things.  First, based upon a photograph of the rear of the Explorer's front passenger seat, Hoffman has "no question" that something hit the seat, but he acknowledges that he has <u>assumed</u> it is the handle of the carrier that struck the front seat.  The colloquy is ambiguous as to whether Hoffman is referring to the carrying handle or the release handle.  As this matter is before the Court on Evenflo's motion for summary judgement, the Court construes the ambiguity in favor of Lindner, and thus construes the statement as a reference by Hoffman to the release handle.  Critical to the admissibility of Hoffman's opinion, however, is his concession that he assumed the release handle hit the seat.  Upon further questioning, Hoffman supports his opinion that the release handle hit the front seat by referencing testing indicating that the <u>child seat</u> would impact the front seat approximately half of the time.  Hoffman then

1  conceded that the issue wasn't whether any portion of the child seat would impact the front
2  seat during such a test, but whether the release handle was depressed.  He further
3  conceded lacking any statistic from any test indicating the frequency at which the release
4  handle impacted the front seat.  In sum, in this passage Hoffman conceded that he
5  <u>assumed</u> the release handle hit the front seat, and that the assumption was based solely
6  on his determination, from a photograph of the front seat, that <u>something</u> had struck the
7  front seat during the accident, and that based upon results of sled and crash tests it is likely
8  that the <u>child seat</u> struck the front seat.  Hoffman further conceded the lack of any test
9  result showing that the release handle would strike the front seat.

   Lindner's biomechanics expert, John Smith, testified as to a "minor" disagreement
11 with Hoffman, that he characterized as "nothing significant."  Smith testified:

   Answer:    Now, he [Hoffman] believes that it was the seat interaction that released the handle.  From a rollover standpoint and a biomechanic standpoint, there's a lot of other things that could have released that handle.
   Question:  Do you have an opinion to a reasonable degree of engineering certainty as to what precisely caused the detachment of the carrier from the base?
   Answer:    Well, the evidence indicates that the handle was pushed releasing it and that's what caused it to come un- -- separated from the base.
   Question:  What pushed the handle, in your opinion?
   Answer:    There's no way to know at this point.  There's certainly, – according to the testimony of the father, there were things stored on the floorboards.  He talks about backpacks and with toys and them [sic].  He talks about diaper bags and other miscellaneous things.  Certainly those have potential to do it.  Could be a limb of somebody.  Possible.  And, of course, Dr. Hoffman believes it was the seat, and I can't refute that.  I'm just saying there's more things that could have done it than just the seat, in my opinion.

Smith Deposition, pg. 14-15.

   Question:  All right.  Do you have an opinion to a reasonable degree of engineering certainty that the release handle had an impact with the back of the front seat?
   Answer:    No.  I can't establish that as a fact.  I would defer to Dr. Hoffman on that.

Smith Deposition, pg. 15.

7

Lindner's accident reconstruction expert, Donald Stevens, testified that he had reviewed Hoffman's deposition testimony and had highlighted some areas he thought relevant to his role in the case. One area referenced by Stevens was the following testimony of Hoffman:

> Question: What degree of certainty do you attach to your opinion that the release handle in this case was depressed and caused the carrier to release from the base as a result of contact with the front passenger seat back?
> Answer (Hoffman): I would say as certain as I possibly could be.
> Question: And part of my point in the question is, in your mind, you know it was contact with the front seat back, as opposed to some flailing arm or some other object in the vehicle hitting the release handle.
> Answer: Well, a flailing arm cannot get in-between to do the kind of damage.

Hoffman Deposition, pg. 114.  In his deposition, Stevens was then asked:

> Question: Do you agree with that or have no opinion about it one way or another?
> Answer: I have not analyzed the car seat to the extent that Mr. Hoffman has. I was interested in this section because I believe that there are other opportunities to depress the release lever than just the seat back. And so I was interested to find what his opinion was after analyzing the car seat about what may have depressed it.
> Question: Are you going to render an opinion in this case specifically what hit the release handle?
> Answer: No. I could not say specifically what hit it. What I have done is consider the testimony about what the environment was like, and if I were asked, I could say what the possibilities that I see were for impact and release based upon the kinematics of the vehicle.

Stevens Deposition, pgs. 20-21.  Stevens was later asked:

> Question: I guess my question is: Do you agree with him [Hoffman] or disagree or not have an opinion about that area at all?
> Answer: I understand your question. What – what – the opinion that I hold is that there are objects and people in the vehicle in addition to the seat back. So exclusive of his testimony, I would have told you that I could see at least three different ways to release the handle, but I have not analyzed the seat, the subject accident seat as he has. So again, I have to step back and defer to him on that opinion.

Stevens Deposition, pg 21-22.  While both of Lindner's other experts identified other possibilities existed for the release of the handle based on the environment within the Explorer, both deferred to Hoffman's testimony as to the specific cause of the release. While each identified possible mechanisms by which the handle could have been released,

8

neither performed any testing nor did any other work with the child restraint that would form the basis of admissible expert opinion that the child restraint system was defectively designed due to a vulnerability to unintended unlatching during the dynamics of a rollover as the result of the release handle being released due to being struck or hit by something other than the front seat.  As both Smith and Stevens expressly deferred to Hoffman as the relevant expert regarding the manner in which the release handle was released, the burden rests on Lindner to establish that Hoffman's expert opinion on the issue is admissible. Hoffman's opinion, however, rested on his determination (from a photograph) that he knew something hit the back of the front seat.  Critically, however, Hoffman conceded that he assumed the object hitting the front seat was the release handle, and that this assumption rested upon the fact that in sled and crash testing, child seats hit the front seats approximately half the time.  As Hoffman acknowledged, however, the material issue is not whether the child seat hit the front seat, but whether the release handle hit the front seat. As to that issue, Hoffman conceded the lack of any empirical evidence indicating that the release handle would hit the front seat.  Lindner has not directed the court's attention to any other evidence by which Hoffman formed his opinion that the release handle hit the front seat in the August 2008 accident.  Lindner has not proffered any admissible expert opinion that, in rollover accidents generally, the release handle is vulnerable to hitting the front seat and releasing the carrier from the convenience base.

Lindner points to Evenflo's receipt of six consumer reports alleging the separation of an Embrace carrier from its convenience base during a vehicle rollover event.  He faults Evenflo for failing to take any meaningful investigation of these complaints, or to conduct any testing.  While Lindner asserts that Hoffman was the first person to ask and answer the question whether there was something about the design of the release handle that rendered it vulnerable to an unintended release during a rollover, Hoffman did not perform

9

any testing to confirm his hypothesis that the design rendered the release handle vulnerable to hitting the front seat in a rollover event.

In his deposition, Hoffman opined numerous times that the cause of the separation of the carrier from its convenience base was the release handle striking the front seat (or the front seat striking the release handle).  While Hoffman asserted a certainty as to this opinion, his own deposition testimony established that the basis of his opinion was an untested assumption.  Accordingly, material to Lindner's claims against Evenflo are (a) whether the design of the release handle rendered it vulnerable to release by striking (or being struck by) the front seat and (b) whether the release handle was released because it struck (or was struck by) the front seat.  The complexity and nature of this material issue is beyond the common experience, and a lay juror would lack the necessary knowledge and experience to render a just and proper decision in the absence of expert testimony. Hoffman's opinion testimony on these material issues is inadmissible, as it rests on nothing more than his assumption that the release handle hit the front seat, and that assumption rested on (a) a photograph interpreted as evidence that something hit the front seat, and (b) empirical evidence that child seats hit the front seats during crash and sled testing. Hoffman offered nothing to support his assumption that the release handle hit the front seat.  Lindner has not identified any other admissible expert opinion testimony. Accordingly,

THE COURT **ORDERS** that defendant Evenflo Company, Inc.'s Motion for Summary Judgment Due to Lack of Admissible Evidence of a Design Defect (#56) is GRANTED. Plaintiffs' claims against Evenflo Company, Inc. are DISMISSED with prejudice.

DATED this \_\_9\_\_ day of February, 2012.

_____
Lloyd D. George
United States District Judge

10