1 Rosemary Missisian, Esq.
Nevada Bar No. 8877
2 WEINBERG, WHEELER, HUDGINS,
GUNN AND DIAL, LLC
3 6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
4 Telephone:     (702) 938-3838
Facsimile:     (702) 938-3864
5 rmissisian@wwhgd.com

6 Charles Lloyd Clay, Jr., Esq.
*Admitted Pro Hac Vice*
7 Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
8 Atlanta, GA  30303
Telephone:     (404) 949-8118
9 chuck@chuckclay.com

10 Dan H. Ball, Esq.
*Admitted Pro Hac Vice*
11 Richard P. Cassetta, Esq.
*Admitted Pro Hac Vice*
12 Bryan Cave
211 North Broadway, Suite 3600
13 St. Louis, MO  63102
Telephone:     314 259-2823
14 Richard.cassetta@bryancave.com
dhball@bryancave.com
15 *Attorneys for Defendant*
*EVENFLO COMPANY, INC.*

16

17                  UNITED STATES DISTRICT COURT

18                       DISTRICT OF NEVADA

19 MATTHEW R. LINDNER, et al.,                 Case No. :        2-10-CV-0051-LDG-LRL

20                          Plaintiffs,

21        vs.                                  **DEFENDANT EVENFLO COMPANY,**
                                               **INC.'S MOTIONS IN** *LIMINE*
22 FORD MOTOR COMPANY,  et al.,

23                          Defendants.

24

25

26

27

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1       Comes now Defendant Evenflo Company, Inc. ("Evenflo") and moves this Court for an

2  *in limine* order prohibiting plaintiff's counsel and their witnesses from referring to any of the

3  following topics without prior court approval.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Legal Standard**

6       A motion *in limine* is a procedural device used to preclude prejudicial or objectionable

7  evidence before it is presented to the jury.  *See McConnell v. Wal-Mart Stores, Inc.*, 995

8  F.Supp.2d 1164, 1167 (D. Nev. 2014); *see also* Stephanie Hoit Lee & David N. Finley,

9  *Federal Motions in Limine* § 1:1 (2012).   A party makes a motion *in limine* when it believes

10  that mere mention of the evidence during trial would be highly prejudicial and could not be

11  remedied by an instruction to disregard.  Black's Law Dictionary 1109 (9th ed. 2009); *Kelly v.*

12  *New W. Fed. Savs*., 56 Cal.Rptr.2d 803, 808 (Ct. App. 1996) (noting that pretrial motions *in*

13  *limine* to preclude the introduction of prejudicial evidence "avoid the obviously futile attempt

14  to 'unring the bell' " once the evidence is aired before the jury).

15       The Supreme Court of the United States has held that trial judges are authorized to rule

16  on these pre-trial motions pursuant to their authority to manage trials. *Luce v. United States,*

17  469 U.S. 38, 41 at n. 4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be

18  conducted so as to "prevent inadmissible evidence from being suggested to the jury by any

19  means")).

20       Only relevant evidence is admissible. Fed. R. Evid. 402.  Evidence is relevant if it has

21  "any tendency to make the existence of any fact that is of consequence to the determination of

22  the action more probable or less probable than it would be without the evidence."  Fed. R.

23  Evid. 401.   The Court may exclude even relevant evidence "if its probative value is

24  substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.  Evidence may

25  be excluded when there is a significant danger that the jury might base its decision on emotion

26  or when non-party events would distract reasonable jurors from the real issues in a case. *See*

27  *Tennison v. Circus Enterprises, Inc*., 244 F.3d 684, 690 (9th Cir. 2001); *U.S. v. Layton*, 767

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1   F.2d 549, 556 (9th Cir.1985).

2        As discussed below, the evidence Evenflo seeks to preclude, *in limine*, is objectionable

3   on a number of grounds, including relevance, lack of foundation, or that the prejudicial effect

4   of the evidence or its propensity to confuse the issues and mislead the jury is substantially

5   outweighed by any probative value.

6        1.   **Dr. Hoffman's Testimony Not Tied to This Case**

7        Plaintiff's expert Arthur Hoffman should be precluded from giving any testimony not

8   tied to this case.  After various preliminary considerations, Dr. Hoffman ultimately testified the

9   cause of the detachment of the carrier was the red release handle contacting the front seatback.

10  His sole defect opinion tied to this case was that the red release handle could be inadvertently

11  actuated in a foreseeable accident due to the handle hitting a front seat back.   See, e.g.,

12  February 9, 2012, Order at 10 (deposition testimony of Hoffman establish that claims are: (a)

13  whether the design of the release handle rendered it vulnerable to release by striking (or being

14  struck) by the front seat and (b) whether the release handle was released because it struck (or

15  was struck by) the front seat).  Dkt. Entry No. 62. See also Plaintiff's statement of his claim on

16  Joint Pre-Trial Report dated February 17, 2015.  Dkt. Entry No.  94.  Testimony about other

17  alleged design defects in the Embrace that were previously suggested but then abandoned,

18  opinions about other child seats that are not substantially similar to the Embrace, extraneous

19  criticisms about the Embrace which lack a causal nexus to Camila Lindner's death, and Dr.

20  Hoffman's purely theoretical and untested alternative design theories should be prohibited

21  from this trial under Federal Rules of Evidence 702, 401 and 403.

22        Specific examples of Dr. Hoffman's opinions and testimony which are not legitimately

23  tied to the issues in this case are addressed separately below.

24        (a)  **Testing Related to Other Model Car Seats**

25        Dr. Hoffman (and Plaintiff's other experts) should be precluded from referencing tests

26  or hearsay conclusions about other model child seats, such as the Evenflo Discovery model or

27  competitor's seats, because there has been no showing that the design of those seats and the

WEINBERG WHEELER HUDGINS GUNN & DIAL

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1   seat at issue in this case, the Embrace, are substantially similar.  For example, although Dr.

2   Hoffman referred to testing performed on the Discovery model, neither Dr. Hoffman nor any

3   of Plaintiff's other experts has stated an opinion in a Rule 26 report that the designs of the

4   Embrace and Discovery are substantially similar, particularly with respect to the carrier-base

5   attachment and the release mechanism.   In fact, the Embrace and the Discovery are not

6   substantially similar, but rather have completely different designs.  *See,* Declaration of Eric

7   Dahle, attached as Exhibit 1.  The latching mechanism for securing the carrier to the base is

8   different in the two child seats.  *Id.*  The Embrace release handle is actuated by depressing it,

9   whereas the Discovery release is actuated by pulling on the release handle.  *Id.*  The Discovery

10   can be attached to the car without the base, whereas the Embrace model is only designed to be

11   used with the base.  *Id.*  The Discovery base sits up higher than the base of the Embrace.  *Id.*

12   Other than the harness system, the Embrace and Discovery share no common parts.  *Id.*

13        As the Court has already recognized, this case is about the child seat involved in this

14   accident, the Embrace, and not other Evenflo child seats.   In denying Plaintiff's motion to

15   compel discovery, in which Plaintiff sought discovery on other Evenflo child seats, the Court

16   held that Plaintiff "fail[ed] to provide legal grounds in support of compelling information about

17   a product which was not involved in the underlying car accident…."  Order Denying Plaintiff's

18   Motion to Compel Discovery, dated January 5, 2011, at 3 [Dkt. Entry No. 43].

19        It is improper in a products liability case to admit evidence that relates to a product that

20   is not identical to the product at issue in the litigation since even s*imilar* products are not the

21   *same* products. Even small variations in products implicate design differences.  *See, e.g.,*

22   *Daniel v. Coleman Co. Inc.*, 599 F.3d 1045, 1048 (9th Cir. 2010).  Testing done on other model

23   car seats where there has been no showing of substantial similarity is irrelevant, lacks

24   foundation, would mislead the jury and confuse the issues, and would be unfairly prejudicial to

25   Evenflo.   Thus, evidence of testing on other model child seats, including testing on the

26   Discovery, should be precluded.

27

1

WEINBERG WHEELER
HUDGINS GUNN & DIAL

(b)    **Supplemental Strap and the  Voluntary Recall of the Discovery**

Dr. Hoffman should be precluded from referring to a "supplemental strap" that was used as a retrofit for a different model child seat than the one at issue in this case.   A voluntary recall/retrofit for the Discovery model 390/391 units was instituted in February 2008 after a review of certain side-impact tests.   The retrofit consisted of sending consumers a supplemental strap to secure the carrier to the base.   Deposition of Randy Kiser ("Kiser Depo."), p. 143:3-144:4, attached as Exhibit 2.  The design of Embrace is totally different from the design of the Discovery, and there has been no showing by Plaintiff to the contrary.  *See*, Affidavit of Eric Dahle, Ex. 1.

Indeed, even Dr. Hoffman concedes that he is not proposing that the Embrace should have been sold with the supplemental strap in 2008.   Deposition of Dr. Arthur Hoffman ("Hoffman Depo.") p. 204:18-205:12, attached asExhibit 3.  Dr. Hoffman also concedes that he is not aware of any other two-piece child seat on the market that uses the supplemental strap. *Id.* at  204:18-204:7.

Courts have held that recall notices and retrofits related to different products are not admissible.  *See, e.g.*, *Vockie v. Gen. Motors Corp., Chevrolet Div.*, 66 F.R.D. 57, 61 (E.D. Pa. 1975) (explaining that "recall notices are not admissible to prove that a particular automobile contained the defect towards which the recall was directed," especially in light of strong public policy concerns); *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985) (excluding evidence of a product recall for the 1986 model, when the vehicle at issue was the 1987 model); *Brock v. Caterpillar, Inc.,* 94 F.3d 220, 225 (6th Cir. 1996) (reversible error to allow evidence regarding Caterpillar's model D10 bulldozer in case involving model D9H).

Evidence of the voluntary recall and supplemental strap also run the risk of misleading the jury to conclude that simply because a supplemental strap was utilized in a different model car seat that was the subject of a voluntary recall, the Subject Car Seat was likewise defective. All evidence which references the Supplemental Strap and Voluntary Recall should be excluded under Federal Rule of Evidence 403. *See Olson*, 410 F. Supp. 2d at 875 (explaining

1  that even if the court were to conclude that any of the recall evidence was relevant, its limited

2  probative value would by substantially outweighed by the dangers of unfair prejudice,

3  confusion of the issues, or misleading of the jury, and by considerations of undue delay and

4  waste of time); *Jordan*, 624 F. Supp. at 77 (same); *Brock,* 94 F.3d at 225 (excluding evidence

5  of a different model product under Rule 403).

6      Accordingly, because the Discovery recall and the retrofit involving the supplemental

7  strap is not relevant to any issue in this case and because mention of it would result in

8  confusion of the issues, mislead the jury, and would unfairly prejudice Evenflo, the Court

9  should preclude Dr. Hoffman (and any other witness or counsel) from referencing the

10  voluntary recall of the Discovery, or the supplemental strap.

11      (c) **Alternative Designs**

12      Dr. Hoffman should not be allowed to speculate to the jury about any alternative child

13  seat designs that were not disclosed during discovery, that were not commercially available at

14  the time the Embrace was made, or that only exist in his in his own imagination and have not

15  been tested or reliably analyzed in any way.  The subject Embrace was manufactured in May

16  2006 and it was purchased by the Lindner family at some point prior to Camila Lindner's birth

17  in January 2008. None of the alternative designs that Dr. Hoffman addressed in cursory fashion

18  meet the requisite standards for admissibility.

19      For example, Dr. Hoffman could point to no other child seat that has the alternative

20  designs he mentions, and he has no evidence that the alternatives he mentions are feasible or

21  would have prevented the injury in this serious accident.  As Dr. Hoffman put it, he has "done

22  nothing"  to verify his theories about alternative designs.  *Id.*, p. 144, lines 4-6, 10 (emphasis

23  added).   Dr. Hoffman has published no peer-reviewed literature that would support his

24  opinions in this case.  *Id.* at p. 201, lines 17-21.  Further, Dr. Hoffman can cite to no peer-

25  reviewed literature that would support his opinions in this case, other than the NHTSA testing

26  that he has not even fully reviewed and in no way analyzed.  *Id.* at p. 201, line 22 through p.

27  202, line 1; pg. 203, line 17 through p. 204, line 1.

WEINBERG WHEELER
HUDGINS GUNN & DIAL

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1     For example, in a supplemental report titled "<u>Lindner Case Summary</u>" that was dated

2    April 23, 2011, and presented to Defendant for the first time at Dr. Hoffman's April 27, 2011,

3    deposition, Dr. Hoffman discussed a number of alternative design theories:  1) "Supplemental

4    release handle block-out feature or latch to prevent unintentional operation or release of the

5    mechanism.   Similar to an airplane seat tray-table."   2) "A shielded release handle."   3)

6    "Eliminate the two-piece child seat in favor of the safer single-piece design used previously."

7    Report of Dr. Hoffman, dated April 23, 2011, attached as Exhibit 4.   Noreference to these

8    theoretical designs should be allowed in this case.

9     First, when asked at his deposition about his proposed modification for a "block" such

10   as that used on the airplane tray table where when the "block" is turned, the tray table comes

11   down, Dr. Hoffman testified that he can point to no child seat that exists today that has such a

12   device.  Hoffman Depo, p. 113, lines 20-22, Ex. 3.   This design alternative was purely a

13   concept from his own mind.  He likewise has no evidence that the shielded release handle or a

14   "depressed area/button lever to release carrier," would have prevented the injuries in this case.

15   He has not designed either proposal.  He has not tested them.  He has no evidence that they

16   would work.  He has no evidence that they would have prevented the detachment in this

17   serious accident.

18    Federal courts addressing product liability cases have routinely recognized that when it

19   comes to alternative designs, an expert must employ a methodology which includes testing or

20   specific identification of alternative designs, written calculations in support of the expert's

21   theories, and analysis as to whether the suggested alternative is feasible.  *See, e.g. McGee,*

22   *supra; Dale v. Gen. Motors Corp.*, 109 F. Supp. 2d 1376 (N.D. Ga. 1999) (expert could not

23   refer to any test that would establish that a buckle with an end release button was any more

24   reliable than the buckle at issue)*; Watkins v. Telsmith,* 121 F.3d 984, 992-93 (5th Cir. 1997)

25   (excluding expert testimony where expert made no design drawings, conducted no tests of his

26   proposed alternatives, and did not analyze how much the alternative designs would cost or

27   what impact they would have on the product's utility); *Colon v. BIC USA, Inc.,* 199 F. Supp. 2d

WEINBERG WHEELER
HUDGINS GUNN & DIAL

53, 77-78 (S.D. N.Y. 2001) (excluding expert testimony where no test data or design sketches were provided to show that modification would make product safer, expert could not identify any product in the marketplace using such design, and expert could provide no testable methodology; *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996) (holding that district court did not err in excluding expert's alternative design opinions where expert had done no testing and had not published any writing or study concerning the incorporation of any of the alternative designs); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (finding that expert engineer's failure to construct or draw proposed alternative design, test proposed alternative design, or point to any manufacturers that incorporated such design were factors justifying the exclusion of his testimony); *Dancy v. Hyster Co.,* 127 F.3d 649, 651 (8th Cir. 1997) (holding that exclusion of expert testimony was proper where expert had not tested his design modification in any way, had not seen the proposed design on any similar product, and had not designed the device he suggested would have prevented Plaintiff's injury).

"Particularly in alternative design cases, merely conceptualizing possibilities is not alone sufficient." *Milanowicz v. Raymond Corp.,* 148 F. Supp. 2d. 525 (D.N.J. 2001) "'[T]he history of engineering and science is filled with finely conceived ideas that are unworkable in practice.'" *Id.* at 535 (quoting *Stanczyk v. Black & Decker, Inc.*, 836 F. Supp. 565, 567 (N.D. Ill. 1993)).

Another important factor in the examination of the admissibility of an expert's opinion in an alternative design case is "whether the proposed ... modification is feasible and/or compatible with the underlying design." *Milanowicz,* 148 F. Supp. 2d. at 535. "This may involve computer analyses and calculations and likely involves testing of the proposed modification." *Id.* Moreover, "even if a modification is feasible, the expert must also address whether that modification will so affect the operation of the device that it makes it ineffective for its intended purpose." *Id.* at 536; *see also Watkins,* 121 F.3d at 992 (excluding expert for failing to make any diagrams or calculations to demonstrate that the alternative design would have prevented the accident without sacrificing utility).

1    Here, Dr. Hoffman's alternative design theories are not based on any recognized

2  methodology, as he has not tested such proposed alternatives, has done no computer analyses

3  or calculations, cannot point to any manufacturer that utilizes such alternative designs, has

4  made no design drawings, has not analyzed how much the alternative designs would cost, has

5  not analyzed how these alternative designs would impact utility, and has not demonstrated that

6  the design changes would have prevented the detachment in this case.   Accordingly, pursuant

7  to Federal Rules of Evidence 702 and 403, this Court should prohibit Dr. Hoffman from

8  offering any opinions regarding his vaguely proffered alternative designs.

9         **(d) <u>Inertial Unlatching</u>**

10    No reference should be permitted to any opinion that the Embrace is defective because

11  it supposedly can come unlatched solely because of inertial forces (*i.e.*, without direct contact

12  with the red release handle or damage to the latching mechanism).   Dr. Hoffman initially

13  opined that the detachment occurred because of this alleged defect.   However, he has

14  abandoned his theory of an inertial unlatching phenomenon in favor of direct contact to the red

15  release handle.   Therefore, it would not be proper for an inertial unlatching theory to be

16  presented to the jury.   Moreover, the Plaintiff made clear in the Joint Pre-Trial report that the

17  inertial release theory had been abandoned:   "Plaintiffs claim that the carrier portion of the

18  child restraint system released from the base due to inadvertent contact with the release

19  handle."   Joint Pre-Trial Report, at 3 [Dkt. Entry No. 94]. Dr. Hoffman's Preliminary Report

20  stated that inadvertent inertia unlatching "probably occurred in the Lindner case."   Preliminary

21  Report, p. 4, section IV, para. A, highlighted bullet point, attached as Exhibit 5.   By the time

22  he was deposed, however, Dr. Hoffman moved away from the inertial unlatching theory

23  altogether and opined that the red release handle was directly hit by the front seat back and was

24  the cause of the carrier detaching from the base.   Hoffman Depo., p. 28, line 8 – p. 29, line 1,

25  Ex. 3.

26    Plaintiff's expert John Smith likewise clearly testified that the Lindner child seat did

27  not detach due to inertial release.   "[I]t appears to be inadvertent release, not an inertial release.

WEINBERG WHEELER
HUDGINS GUNN & DIAL

. .An inertial release, if it happened, of course, would be a bad thing.  It shouldn't happen.  But I don't – and, again, I defer to Dr. Hoffman on this.  He did not see evidence of an inertial release."  Deposition of John Smith, ("Smith Depo.")p. 36, lines 13-19, attached as Exhibit 6..

Any design issue related to alleged inertial unlatching should not be mentioned in this case and any comments about such theory or opinions should be excluded under Federal Rules of Evidence 702, 401 and 402.

**(e)      Carrier-Base Design**

No reference should be permitted to an allegation that the carrier-base design is inherently defective.  The federal government approves this design.  Tens of millions of child seats have been sold with this design concept for decades by multiple manufacturers.

The only support in Dr. Hoffman's report about the two-piece design is based upon recalls on seats other than the Embrace.  He has not cited to any evidence to support a theory that the Embrace two-piece design is defective.  In his deposition, Dr. Hoffman tried to make the broad false claim that, "NHTSA found that infant restraint systems with removable bases were less safe than infants restrained in the carrier only."  Hoffman Depo., pp. 103-104, Ex. 3.  That purported conclusion was Dr. Hoffman's, not NHTSA's.  In fact, NHTSA expressly stated in the document cited by Dr. Hoffman that "it is important to note that NHTSA believes use of the removable base provides several desirable design features for consumers (i.e., ease of installation) therefore the agency is not suggesting that consumers stop using the removable base with these infant restraints."  2004 NHTSA Technical Report, , pp. 16-17, attached as Exhibit 7.

Any opinions that the carrier-base design is defective should be excluded as lacking in foundation under Rule 702 and unfairly prejudicial under Rule 403.

**(f)      Alleged Problems With The Injection Molding of the Polypropylene Shell Because Certain Parts of the Child Seat were made in China**

No reference should be made to alleged problems with the injection molding for the polypropylene components of the Embrace because they were manufactured in China.  Dr.

1   Hoffman admitted that he is not a materials expert and has not performed any materials or

2   plastics analysis, is not qualified to do so, and agrees that molding of the polypropylene had

3   nothing to do with this accident.  Hoffman Depo., p. 39, line 23 – p. 40, line 17, Ex. 3,.  Yet, he

4   did testify that, "[h]owever, there are problems. . . This thing was made in China, okay?  I can

5   tell you that there are some very serious mold problems. . . I question the type of material it

6   was made of.  But that was not the failure mode, and we're not going to talk about it, but it's

7   just one more thing that - - that deals with this two-piece unit. . . I'm not going to focus on that

8   at all.  I'm stuck with the hit to the front seat."  *Id.,* p. 40, line 6 – p. 41, line 8.

9           Because Dr. Hoffman does not tie any alleged molding issues to this case, his testimony

10  regarding molding problems and the fact that the subject child seat was made in China should

11  be excluded as unreliable under Rule 702, irrelevant under Rules 401 and 402, and unfairly

12  prejudicial under Rule 403.

13          2.      **Police Report/Seatbelt Use**

14          No reference should be permitted to any mention of seatbelt use in the police report

15  because any such references are hearsay, not supported by sufficient foundation, and are

16  unfairly prejudicial.  The accident at issue in this case occurred on August 14, 2008, in Sonora,

17  Mexico.  The Mexican Federal Highway Patrol prepared an accident report, which has been

18  translated into English.  The English translation of the accident report states, in relevant part,

19  that "[t]he driver of the vehicle and his passengers were wearing seatbelts."  Accident Report,

20  p.3, attached as Exhibit 8.  Elsy Lindner Granados ("Ms. Lindner"), the wife of Matthew

21  Lindner and the mother of Camila, was ejected from the Ford Explorer during the rollover

22  sequence.  Evenflo believes that the engineering, scientific, and medical evidence will show

23  that Ms. Lindner was not belted.  The issue of whether Ms. Lindner was belted or not belted is

24  a significant issue in the case, as Ms. Lindner was seated immediately to the left of Camila, and

25  Evenflo believes the engineering, medical, scientific, and physical evidence will show that Ms.

26  Lindner came into violent contact with Camila's child seat during the accident sequence and

27  likely forced the child seat carrier off its base.

WEINBERG WHEELER
HUDGINS GUNN & DIAL

The statement in the police report regarding seatbelt use is inadmissible hearsay. *See* Fed.R.Civ.P. 805; *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187-88 (8th Cir. 1981) (finding that police report regarding cause of accident was not admissible under public record exception to hearsay rule because officer did not show source of statement on the report and the report thus lacked trustworthiness). The Ninth Circuit is clear that "police reports by themselves are unauthenticated hearsay," and "[h]earsay contained in a police report is inadmissible." *Carrasco v. Metro Police Dep't*, 4 F. App'x 414, 416 (9th Cir. 2001); *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973). Although an entry in a police report may be admitted if the proponent of the evidence proves that the entry is "based on an officer's observation and [personal] knowledge," "statements attributed to other persons are clearly hearsay, and inadmissible." *Colvin*, 479 F.2d at 1003. *See also Frias v. Valle*, 101 Nev. 219, 221, 698 P.2d 875, 876 (1985) (stressing that accident reports containing statements of third parties are inadmissible evidence).

Moreover, the Ninth Circuit has stressed that "police reports are not especially useful instruments for finding out what persons charged actually did." *Olivas-Motta v. Holder*, 746 F.3d 907, 919 (9th Cir. 2013). Indeed, "[a]ll the defects of hearsay, double hearsay, and triple hearsay apply, since people may speak to the police despite lack of personal knowledge and lack of adequate observation, may be misunderstood, and what they say may be misreported. People sometimes lie or exaggerate when they talk to the police." *Id.* Accordingly, because the statement in this case lacks foundation and is wholly unreliable, it would be unfairly prejudicial to Evenflo to admit it into evidence.

The police report is silent as to the basis on which it makes the statement. With respect to Ms. Lindner, that statement in the police report about the passengers being belted cannot be based upon observations by the investigating police officer, as Ms. Lindner was ejected from the vehicle before the police arrived. To the extent the statement is based upon information provided from some unidentified person, it is hearsay within hearsay. *See* Fed.R. Evid. 805. The statement also lacks foundation, is unreliable, and would be unfairly prejudicial to

1 Evenflo.  Thus, the statement in the police report about seatbelt use is also inadmissible under

2 Rule 403 of the Federal Rules of Evidence.

3    3. **Other Incidents/Injuries**

4    No reference should be permitted to any other incident or injury involving an Embrace

5 child seat, or any other child seat, because any evidence related to such an incident is hearsay

6 and not supported by testimony from a person with first-hand knowledge that the other

7 incidents were substantially similar. Therefore, the other incidents are irrelevant and unfairly

8 prejudicial.  Notice is not an issue in this case because Evenflo is not contending that it did not

9 have notice before 2006-2008 that it was unavoidable that a carrier could detach from a base in

10 some severe accidents.

11    During discovery, Evenflo produced some incident reports based upon contacts from

12 consumers (phone calls or letters describing incidents related to vehicle rollover accidents

13 where a child was reportedly seated in an Embrace).  Such hearsay descriptions of alleged

14 incidents must be excluded under Federal Rules of Civil Procedure 802 & 805. *Wolf by Wolf v.*

15 *Procter & Gamble Co.*, 555 F. Supp. 613, 620 (D.N.J. 1982) (refusing to admit the defendant's

16 log of telephone contacts by consumers in a toxic shock syndrome case, because while the log

17 might fit into the business records exception, the complaints themselves were hearsay not

18 within an exception to the hearsay rule and had no circumstantial guarantees of

19 trustworthiness); *Guild v. General Motors Corp.,* 53 F.Supp.2d 363, 368 (W.D.N.Y. 1999)

20 (excluding customer complaints because they constitute inadmissible hearsay and are "not the

21 result of a continued and detailed investigation, but rather served merely as preliminary

22 investigation"); *Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861-62 (D.N.D. 2006)

23 (precluding party from referencing consumer complaints to prove brake ineffectiveness,

24 relative dangerousness of condition, negligence, and/or a defective condition because

25 "regardless of how the evidence is characterized, the customer complaints would be offered for

26 the truth of the matters asserted therein," and thus constitute inadmissible hearsay); s*ee also*

27 *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 140 (Tex. 2004) ("[C]onsumer complaints in

WEINBERG WHEELER
HUDGINS GUNN & DIAL

a company's files are generally hearsay within hearsay, and require their own exception in addition to that for business records generally.").

Moreover, because consumer complaints are often accusatory and self-serving, and are not under oath or subject to cross-examination, such complaints lack the required guarantee of reliability to be admitted under an exception to the hearsay rule. *Ford Motor Co. v. Phelps*, 389 S.E.2d 454, 456 (Va. 1990) (refusing to admit customer complaints under an exception to the hearsay rule because the required guarantee of reliability was entirely absent).

It is also well-established that evidence of other incidents is admissible only upon a showing through competent evidence that the other incidents are "substantially similar" to the incident at issue. *See, e.g., Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991); *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003); *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 889 (9th Cir. 1991); *Akkerman v. Mecta Corp.*, 247 Fed. Appx. 895, 897 (9th Cir. 2007); *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1195 (D.C.Cir. 1986); *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir. 1985); *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981); *Julander v. Ford Motor Co.*, 488 F.2d 839, 846–47 (10th Cir. 1973). The rule rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under Federal Rules of Evidence 401 and 402. *See Cooper*, 945 F.2d at 1105; *Pettyjohn v. Kalamazoo Center Corp.*, 868 F.2d 879, 881 (6th Cir. 1989); *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Chapman v. Mazda Motor of Am., Inc.*, 7 F. Supp. 2d 1123, 1128 (D. Mont. 1998). Thus, the Court should not admit evidence of other accidents unless the proponent of the evidence proves, through competent testimony from witnesses with first-hand knowledge, that the other accidents are substantially similar. *White*, 312 F.3d at 1009.

In this case, there is no testimony from any person with first-hand knowledge that the incidents discussed in the various consumer complaints are substantially similar to the crash in question. Indeed, the incident reports contain virtually no description of the accidents.

1    Regarding the six complaints involving alleged rollovers in which the Embrace reportedly

2    detached from the base, some consumers refused to provide details concerning their accident

3    when reporting their complaint to Evenflo.   Kiser Depo., p. 121:20-122:16, Ex. 2.   With

4    respect to other consumer complaints involving the reported rollovers, an inspection of the seat

5    by Evenflo revealed either that the carrier was likely not attached to the base during the

6    accident or it was likely not  properly attached.   *Id.*

7        Because Plaintiff does not have competent evidence that the other incidents based upon

8    consumer contacts are substantially similar to the accident in question, such evidence should be

9    excluded.   *See Daniel v. Coleman Co. Inc.*, 599 F.3d 1045, 1048 (9th Cir. 2010) (excluding

10   evidence of accidents involving other models of Coleman propane heaters); *Akkerman*, 247

11   Fed. Appx. at 897 (excluding evidence of dissimilar accidents); *Chism v. CNH America LLC*,

12   638 F.3d 637, 641 (8th Cir. 2011) (other amputations caused by hay baler excluded where they

13   involved different models and workers stood in different positions); *Ahrens v. Ford Motor Co.*,

14   340 F.3d 1142, 1145 (10th Cir. 2003) (where tractor ran over plaintiff after he was thrown

15   from it after being struck from behind, other accidents where drivers were killed when the

16   tractor rolled over on them was not relevant to show the product was defective in not having a

17   seat belt and roof bars); *Crump v. Versa Products, Inc.*, 400 F.3d 1104, 1109 (8th Cir. 2005)

18   (incidents of hinge failure in ladder after plaintiff's accident or where ladder was in a different

19   position was not admissible to prove the defect). *See also Wilson v. Hewlett-Packard Co.*, 668

20   F.3d 1136, 1148 (9th Cir. 2012) (explaining that the consumer complaints did not support an

21   inference that the defendant had notice of the defect at the time it sold the product to the

22   plaintiffs); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 111, 450 N.E.2d 204, 210 (1983)

23   (same).

24       Moreover, consideration of the facts related to these other incidents create the prospect

25   of having to conduct numerous "mini-trials" on other accidents and is a compelling reason to

26   exclude other incidents or lawsuits.   *Cf. Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1510

27   n.10 (11th Cir. 1990) (evidence of another accident excluded under Rule 403 in part because it

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1   "would have required a trial within a trial" to determine its admissibility); *Wolf v. Proctor &*

2   *Gamble Co*., 555 F. Supp. 613, 622 (D.N.J. 1982) (exclusion of allegedly similar incident

3   evidence necessary because "[a] detailed analysis would have to be made of each complaint in

4   order to determine whether the facts were similar enough" and because of danger that the jury

5   might focus on other incidents and lose sight of issues being litigated).

6        Evenflo therefore respectfully requests that this Court exclude all evidence of other

7   incidents involving the Evenflo Embrace or any other child seat.

8        4.   **Other Lawsuits**

9        For the reasons discussed above, no reference should be permitted to any other lawsuits

10  or verdicts because any such references would be irrelevant, without proper foundation, and

11  would result in confusion of the issues, mislead the jury, and be unfairly prejudicial.  *See* Fed.

12  R. Evid. 402, 403, 802 & 805.

13       5.   **Voluntary Recall Related to Carry Handle for Embrace**

14       No reference should be permitted to a voluntary recall related to the carry handle for the

15  Embrace that was initiated in 2007.  The carry handle enables parents to carry the child in the

16  seat when it is outside of the vehicle.  Plaintiffs do not allege that the design of the Embrace

17  carry handle played any role in this accident.  In addition, the subject child seat was not

18  covered by the recall.

19       In 2007, Evenflo initiated a voluntary recall related to the carry handle on Embrace

20  seats manufactured before April 8, 2006.  Kiser Depo. p. 164:15-165:23, Ex. 2.  The recall

21  provided for metal rivets to be inserted in the "side triggers" (the side triggers enabled the user

22  to move the carry handle to different positions).  *Id*.  The Embrace at issue in this case was

23  manufactured in May of 2006, and thus was not covered by the recall.  *Id*.  In other words, the

24  Embrace at issue in this case already had the metal pin when it was manufactured.  *Id*.

25  Moreover, none of Plaintiff's experts has rendered an opinion that a defect in the carry handle

26  of the Embrace proximately caused the injuries in this case.  Accordingly, any reference to the

27  recall of the carry handle would be irrelevant to the issues in this case, and would confuse the

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1    issues, mislead the jury, and be unfairly prejudice Evenflo.   Fed. R. Evid. 402 & 403.

2        6.    **Smith/Stevens – Cause of Detachment**

3        No reference should be permitted to the speculative testimony of Plaintiff's experts

4    John Smith and Don Stevens about what might have contacted the release lever to cause the

5    detachment of the carrier from the base.   They have no opinion to a reasonable degree of

6    engineering certainty as to what caused the detachment.   Smith Depo. p. 16:17-17:12, Ex. 6;

7    Deposition of Don Stevens ("Stevens Depo"),p. 21:5-22:19, attached as Ex. 9.   They only

8    speculate about possible causes.   Id.   They also defer to Plaintiff's expert Arthur Hoffman

9    regarding his opinion that the release lever was activated by contact with the front seatback.

10   Smith Depo. p. 15:20-24, Ex. 6; Stevens Depo. p. 20:20-4, Ex.9.  Thus, the opinions of Smith

11   and Stevens are without sufficient foundation and are irrelevant and unfairly prejudicial.  *See*

12   Fed. R. Evid. 402, 403, 702, & 703.

13       7.    **Ease of Use Ratings**

14       No reference should be permitted to NHTSA Ease of Use ratings.   These ratings

15   evaluate a consumer's ability to install the child seat in the vehicle and to secure the children in

16   the seat.  There is no allegation in this case that any misuse contributed to the injuries.  Thus,

17   the ratings are irrelevant and unfairly prejudicial.  *See* Fed. R. Evid. 402 & 403.

18       8.    **Hearsay Articles Not Related to Embrace**

19       No reference should be made to articles or literature that are hearsay and contain

20   additional hearsay statements, do not relate to the Embrace, do not relate to the circumstances

21   of this accident, or are without sufficient foundation.  For example, a number of articles were

22   included in Dr. Hoffman's files, none of which related to the Embrace, and all of which are

23   hearsay, hearsay within hearsay, are irrelevant, lack a proper foundation, and are unfairly

24   prejudicial.

25       One such article is a Chicago Tribune article dated March 1, 2009.  The article reports

26   on testing of other car seats done by "federal researchers."  It purports to selectively report on

27   the results of the research and selectively quote from current and former government

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1   employees and others.  It does not refer to the Embrace.  *See,* Exhibit 10.  Another article in

2   Dr. Hoffman's files is a July 14, 2007 article on car seat safety, which also does not refer to the

3   Embrace.   It references a lawsuit involving another Evenflo model and lawsuits involving

4   competitor car seats.   The article also includes hearsay within hearsay statements from a

5   number of individuals, including unnamed individuals and a Plaintiff's lawyer.  *See* Exhibit 11.

6         Federal courts across the country have routinely held that newspaper, magazine, and

7   journal articles are inadmissible hearsay.  *See, e.g. Cody v. Harris*, 409 F.3d 853, 860 (7th Cir.

8   2005) (holding that newspaper article was clearly hearsay); *Dillon v. Nissan Motor Co.*, 986

9   F.2d 263, 270 (8th Cir. 1993) (upholding trial court's exclusion of magazine article regarding

10  testing in product liability case); *Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.,* 986 F.2d 605 (1st

11  Cir. 1993) (noting that magazine article was inadmissible under Rule 802). The same is true in

12  this case and the articles should, therefore, be excluded as inadmissible hearsay.

13        Therefore, these hearsay newspaper articles and literature should be excluded under

14  Federal Rule of Evidence 402, 403, 802, and 805.

15        9.    **Discovery Issues**

16        No reference should be permitted to any discovery disputes, document retention or

17  production issues or similar matters because they are irrelevant, would result in confusion of

18  the issues and mislead the jury, and are unfairly prejudicial.  *See*  Fed. R. Evid. 402 & 403.

19        10.    **Corporate Conduct**

20        No reference should be permitted to any alleged corporate misconduct by Evenflo not

21  related to the Embrace or any alleged misconduct by any other corporation because such

22  references would be irrelevant, would result in confusion of the issues and mislead the jury,

23  and would be unfairly prejudicial.  *See* Fed. R. Evid. 402 & 403.

24        11.    **Financial Circumstances of the Parties**

25        No reference should be permitted to the financial circumstances of Evenflo or Plaintiff

26  Matthew Lindner because such references would be irrelevant and unfairly prejudicial.

27  Evidence or testimony of a party's wealth (or lack thereof) is generally irrelevant to the issue

WEINBERG WHEELER
HUDGINS GUNN & DIAL

of liability.  *See Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955) (admission of financial condition evidence tends to effectuate prejudicial results); *see also Brokopp v. Ford Motor Co.*, 71 Cal. App. 3d 841, 860 (Ct. App. 1977) ("Appeals to the sympathy of the jury based on the size or corporate status of a defendant are improper.").  Testimony, evidence, or reference to financial condition is more prejudicial than probative and serves only to confuse and mislead the jury.  *See* Fed. R. Evid. 403.  Evenflo therefore respectfully requests that this Court exclude any reference to Evenflo's financial condition or profits or the financial condition of Matthew Lindner.

### 12.  **Insurance**

No reference should be permitted to any insurance coverage.  In fact, Evenflo is largely self-insured.  Thus, any reference to insurance would be irrelevant and unfairly prejudicial.  Plaintiff is prohibited by Federal Rule of Evidence 411 from introducing evidence that Evenflo was insured against liability.  The rule of evidence provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."  Because the language is plain and unambiguous, any evidence that Evenflo may carry liability insurance is inadmissible, and must be prohibited.

### 13.  **Attorney Courtroom Demonstrations**

No attorney should perform any courtroom demonstrations of any alleged failure or defect mechanism in the Embrace.  Courtroom demonstrations by lawyers that mislead courts or juries in an attempt to make evidentiary points, sometimes referred to as "parlor tricks," lack foundation, mislead the jury, are unfairly prejudicial, and should be excluded. *See generally Carson v. Polley,* 689 F.2d 562, 579 (5th Cir. 1982).  For example, Plaintiff's counsel in this case should not be permitted to hold the Embrace upside down and detach the carrier by pressing the release handle, because such a demonstration does not accurately reflect the forces and conditions that would be at play in a rollover accident such as the one at issue in this case.  For example, in an actual rollover sequence, the weight of the child would be in the seat and there would be centrifugal forces acting on the seat which would require much greater forces to

1   be applied to the release handle for the carrier to detach from the base than would be required

2   in the "parlor trick" demonstration of Plaintiff's counsel.

3         It is for reasons such as this that courts have refused to allow courtroom demonstrations

4   unless and until the party offering the courtroom demonstration or experiment lays proper

5   foundation establishing a similarity of circumstances and conditions.  *United States v. Gaskell*,

6   985 F.2d 1056, 1060 (11th Cir. 1993); *Way v. Hayes*, 89 Nev. 375, 377 (1973).  *See generally*

7   *Dale v. Gen. Motors Corp.*, 109 F. Supp. 2d 1376, 1380-81 (N.D. Ga. 1999) (noting that "the

8   act of intentionally opening a buckle by striking the back side of the buckle housing has been

9   referred to as a 'parlor trick' since 1966," and holding that such evidence "is unreliable and is,

10  in fact, of little relevance to explain the forces at work in plaintiff's accident"); *Rogers v. Ford*

11  *Motor Co.,* 952 F. Supp. 606, 617 (N.D. Ind. 1997) (noting that "evidence that a seat belt

12  buckle can be made to open with a hammer blow proves neither that the buckle opened in a

13  particular accident nor, if it did, that an alternative design would have proven more effective."

14        Accordingly, the Court should preclude any courtroom demonstrations without a proper

15  foundation.

16        14.   **Failure to Perform a Rollover Test**

17        No reference should be permitted about the absence of rollover testing on the Embrace

18  before this accident.  There is no separate cause of action for "failure to test."  *See,  Phillips v.*

19  *C.R. Bard, Inc.,* 3:12-cv-00344-RCJ-WGC, 2015 U.S. Dist. Lexis 7513, at *18 (D. Nev. Jan.

20  21, 2015) ("There is […] no independent duty to test, and liability cannot be based purely on a

21  failure to conduct certain kinds of tests.").

22        Moreover, Plaintiff has no evidence that there was an industry or government standard

23  to do rollover testing.  Plaintiff has no evidence that failure to do a rollover test breached a

24  standard of care.  No Plaintiff's expert has identified any applicable standard.  There is no

25  evidence that rollover testing was feasible to provide relevant information with respect to the

26  circumstances in this accident in view of the myriad of vehicles in which this child seat can be

27  used and the vast number of rollover scenarios.  Thus, any reference to failure to do a rollover

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1    test would be irrelevant, result in confusion of the issues, would mislead the jury, and would be

2    unfairly prejudicial.  *See*  Fed. R. Evid. 402 & 403.

3              **15.    Conscious Pain and Suffering By Camila Lindner**

4              No reference should be permitted about Camila Lindner having endured any conscious

5    pain and suffering.   In this case, there is no evidence indicating that Camila was conscious

6    after being ejected from the vehicle and before her death. Similarly, there is no evidence

7    suggesting that Camila suffered any pain at all.  Where the record is devoid of any evidence, as

8    here, from which a jury can determine with reasonable certainty that a particular decedent

9    survived, was conscious and endured pain and suffering, recovery for alleged pre-death pain

10   and suffering by the decedent must be denied. *See generally Cook v. Ross Island Sand &*

11   *Gravel Co.*, 626 F.2d 746, 749-50 (9th Cir. 1980) ("[I]n order for a decedent's beneficiaries to

12   recover damages for a decedent's pain and suffering, it is necessary to establish that the

13   decedent was conscious for at least some period of time after he suffered the injuries which

14   resulted in his death."); *Nunsuch ex rel. Nunsuch v. United States*, 221 F. Supp. 2d 1027, 1035

15   (D. Ariz. 2001) ("[D]amages for pain and suffering must be reasonably certain and cannot be

16   predicated upon conjecture and speculation."); *Banks ex rel. Banks v. Sunrise Hosp.*, 120 Nev.

17   822, 842, 102 P.3d 52, 66 (2004) ("[I]n order to award damages for pain and suffering, a jury

18   must find substantial evidence that the damages are probable.").

19             Because any reference to Decedent's alleged conscious pain and suffering would be

20   misleading, extremely prejudicial and manifestly unjust to Evenflo, under Federal Rule of

21   Evidence 403, such testimony should be precluded.

22             16.    **Settlement Discussions**

23             No reference should be permitted to any settlement discussions.  It is axiomatic that

24   evidence of conduct or statements made in compromise negotiations is not admissible at trial.

25   Fed. R. Evid. 408.  Accordingly, any such references should be precluded.

26

27

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1

### 17.   **References to the Location, Size, or Expertise of Law Firms**

This Court should exclude any reference to the location or size of the law firms representing Evenflo in this case or to the expertise of the lawyers or law firms. Such references are irrelevant to the issues in this lawsuit and have the potential to create prejudice, bias, confusion, thereby violating Federal Rule of Evidence 403.

### 18.   **References to Evenflo's Ownership or Shareholders**

No reference should be permitted to Evenflo's ownership or shareholders. Such information is not relevant to the issues in this lawsuit and should be excluded under Federal Rule of Evidence 402. Moreover, such information has to potential to confuse the issues, mislead the jury, and be unfairly prejudicial, and thus should also be excluded under Federal Rule of Evidence 403.

DATED this 22nd day of June, 2015.

<div style="margin-left:40%">

*/s/ Rosemary Missisian*
Rosemary Missisian, Esq.
WEINBERG, WHEELER, HUDGINS,
GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:      (702) 938-3838
Facsimile:       (702) 938-3864
rmissisian@wwhgd.com

Charles Lloyd Clay, Jr., Esq.
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA  30303
Telephone:      (404) 949-8118
chuck@chuckclay.com
Dan H. Ball, Esq.
Richard P. Cassetta, Esq.
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:      314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com

*Attorneys for Defendant*
*EVENFLO COMPANY, INC.*

</div>

WEINBERG WHEELER
HUDGINS GUNN & DIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

WEINBERG WHEELER
HUDGINS GUNN & DIAL

### CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2015, a true and correct copy of the

foregoing **DEFENDANT EVENFLO COMPANY, INC.'S MOTIONS IN *LIMINE*** was

served by e-service, in accordance with the Electronic Filing Procedures of the United

States District Court, to the following.

Joseph L. Benson II, Esq.
BENSON & BINGHAM
11441 Allerton Park Drive, Suite 100
Las Vegas, NV 89135
joe@bensonbingham.com
*Attorneys for Plaintiffs*

Larry W. Lawrence, Jr., Esq.
Lawrence Law Firm
3112 Windsor Road, Suite A-234
Austin, TX 78703
lawrencefirm@aol.com
*Attorneys for Plaintiffs*

Ricardo A. Garcia, Esq.
Jody R. Mask, Esq.
Garcia Ochoa & Mask, LLP
820 S. Main St.
McAllen, TX 78501
ric@gomlaw.com
jody@gomlaw.com
*Attorneys for Plaintiffs*

 */s/ Cynthia S. Bowman*
An employee of WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC