

1  JOSEPH L. BENSON II, ESQ.
   Nevada Bar No. 7276
2  BENSON & BINGHAM
   11441 Allerton Park Drive, Suite 100
3  Las Vegas, NV 89135
4  (702) 382-9797, telephone
   (702) 382-9798, facsimile
5  litigate@bensonbingham.com

6  LARRY W. LAWRENCE, ESQ.
   Texas Bar No. 794145
7  LAWRENCE LAW FIRM
8  3112 Windsor Rd., Suite A234
   Austin, TX 78703
9  (956) 994-0057, telephone
   (956) 994-0741, facsimile
10 lawrencefirm@aol.com

11 RICARDO A. GARCIA, ESQ.
   Texas Bar No. 7643200
12 JODY R. MASK, ESQ.
13 Texas Bar No. 24010214
   GARCIA OCHOA MASK
14 820 S. Main Street
   McAllen, TX 78501
15 (956) 630-2882, telephone
16 (956) 630-2882, facsimile
   ric@gomlaw.com
17 jody@gomlaw.com

18 Attorneys for Plaintiffs

19

20                  UNITED STATES DISTRICT COURT

21                       DISTRICT OF NEVADA

22 MATTHEW R. LINDNER, individually; as      )  CASE NO.: 2:10-cv-00051-LDG-VCF
   surviving spouse and legal heir of ELSY   )
23 LETICIA GRANADOS-MARTINEZ, deceased;      )
   as surviving parent and legal heir of CAMILA )
24 LYNETE LINDNER, a deceased minor; and as  )
   Guardian Ad Litem of PAULINA GRANADOS-    )
25 MARTINEZ, a minor; FERNANDO               )
   GRANADOS-MAGALLON, individually and as    )
26 surviving spouse and legal heir of REFUGIO )
27 LETICIA MARTINEZ COSIO,                   )
                                             )
28            Plaintiffs,                    )

200329

|   |   |
|---|---|
| vs. | ) |
| | ) |
| FORD MOTOR COMPANY, a Delaware corporation; BERTHA MEZA d/b/a OROZCO AUTO SALES; EVENFLO COMPANY, INC., a Delaware corporation; BIG LOTS STORES, INC., an Ohio corporation; DOES I through XX, inclusive and ROE BUSINESS ENTITIES I through XX, inclusive, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S OPPOSITION TO DEFENDANT EVENFLO COMPANY, INC.'s MOTION IN LIMINE TO EXCLUDE REFERENCE OF CORPORATE CONDUCT
[Motion No. 10]

Plaintiff MATTEW R. LINDNER, Individually and as surviving spouse and legal heir of ELSY LETICIA GRANADOS-MARTINEZ, deceased; and as surviving parent and legal heir of CAMILA LYNETTE LINDNER, a deceased minor, through his attorneys, Joseph L. Benson, II of BENSON & BINGHAM, Larry W. Lawrence, Jr. of THE LAWRENCE LAW FIRM, and Ricardo A. Garcia of GARCIA, OCHOA MASK, LLP, hereby submits his Opposition to EVENFLO MOTOR COMPANY, INC.'s Motion in Limine to Exclude Reference of Corporate Conduct [Motion No. 10]. This opposition is made and based upon the Memorandum of Points and Authorities that follow below, the papers and pleadings on file herein, and any oral argument entertained by the Court.

DATED this 26 day of June, 2015.

BENSON & BINGHAM

/s/ Joseph L. Benson II
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276

Attorneys for Plaintiffs

200329

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

Defendant EVENFLO requests an order excluding from evidence any corporate misconduct by EVENFLO not directly related to the Embrace. To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Phillips v. C.R. Bard, Inc.*, 2015 U.S. Dist. Lexis 7513, *6 (D. Nev. Jan. 20, 2015) quoting *Ind. Ins. Co. v. G.E.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be solved in the proper context." *Hawthorne Partners v. AT&T Tech,, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is always better suited during actual trial to assess the value and utility of evidence." *Wilkins v. K mart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

### II.

Plaintiff should be allowed to introduce corporate conduct by EVENFLO attributable to any of the designs, testing, manufacturing, and associated problems it had with any of its child seats due to the deposition testimony of its corporate representative, Randolph Kiser. During his deposition, Randolph Kiser testified EVENFLO relied on all its prior knowledge, testing, and field reports regarding prior child seats, in developing testing and marketing of the Evenflo Embrace Child Seat. *Deposition of Randolph Kiser ("Kiser Depo")*, p. 35:15-23, pp. 65:18 - 66:3, p. 108:7-13, which is attached hereto as Exhibit A.

. . . .

. . . .

. . . .

. . . .

3

## II.

EVENFLO'S motion in limine should be denied as a pretrial matter. Plaintiff will pave an adequate foundation for admissibility of EVENFLO's corporate conduct not directly related to the Embrace during trial.

DATED this 26th day of June, 2015.

BENSON & BINGHAM

/s/ Joseph L. Benson II
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFF'S OPPOSITION TO EVENFLO MOTOR COMPANY, INC.'S MOTION IN LIMINE TO EXCLUDE REFERENCE OF CORPORATE CONDUCT [MOTION NO. 10]**. was made this date by electronic service to the following:

Rosemary Missisian, Esq.
WEINBERG, WHEELER, HUDGINS,
    GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV 89118
Attorney for Defendant,
Evenflo Company, Inc.

Charles L. Clay, Jr., Esq.
CHUCK CLAY & ASSOCIATES
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30303
Attorney for Defendant,
Evenflo Company, Inc.

Dan H. Ball, Esq.
Richard P. Cassetta, Esq.
BRYAN CAVE
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Attorney for Defendant,
Evenflo Company, Inc.

Larry W. Lawrence, Jr., Esq.
LAWRENCE LAW FIRM
3112 Windsor Road, Suite A-234
Austin, TX 78703
Attorney for Plaintiffs

Ricardo A. Garcia, Esq.
Jody R. Mask, Esq.
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
Attorney for Plaintiffs

DATED this 26 day of June, 2015.

_____
An employee of BENSON & BINGHAM

# Exhibit A

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

MATTHEW R. LINDENER, et al.,       )
                                   )
                Plaintiffs,        ) NO. 2:10-CV-000:1-LDG-LRL
                                   )
        vs.                        )
                                   )
EVENFLO COMPANY, INC., a           )
Delaware corporation,              )
                                   )
                Defendant.         )

CONFIDENTIAL

Videotaped deposition of RANDOLPH L. KISER, a witness hereto, taken by the Plaintiffs, as upon oral examination and pursuant to the Federal Rules of Civil Procedure and agreement of counsel as to time and place, taken before me, Connie F. Scott, a Professional Court Reporter and Notary Public in and for the State of Ohio, at the Executive Suites, 2661 Commons Boulevard, Beavercreek, Ohio, on March 29, 2011, at 9:24 a.m.

\* \* \*

Atkinson-Baker Court Reporters
www.depo.com
800-288-3376
Job No. A5017F7
Case No. 2:10-CV-000:1-LDG-CRL
Reporter: Connie F. Scott

Page 35

1  the absence of samples, it would be the kinds of things that
2  we have in place that will be able to assess this or address
3  this concern, yes.
4  Q. Okay. So just because a design control references, for  22:03
5  instance, sled testing, or live testing, at the time this
6  document is prepared, it doesn't mean that that testing has
7  actually been done yet, it just anticipates that that testing
8  might check to see whether or not the particular potential
9  failure mode is going to be looked at or tested in some way?
10 A. Based on, based on how we run our business, we know, and  22:04
11 as set forth in the product specification the kinds of
12 testing that we will be doing, so for instance, live testing
13 is one of the things that we routinely do as part of a
14 product's qualification.
15 Q. Okay, but at the time the document is being prepared in  22:04
16 2004 and they're talking about design controls, they're not
17 looking retrospectively at tests that were done, they're
18 looking at prospectively at tests that can be done to check
19 the integrity of the product for a particular type of failure
20 mode?
21 A. We're looking retrospectively at what was done in the  22:04
22 past on other products; prospectively at what we will do on
23 this product when it's available to test.
24 Q. Okay. Let's look, for example, at a couple of different  22:04
25 types of failure modes that were looked at in 2004. There's

```
                                                              Page 65
```

1   of a seat in front of the carrier --
2   Q.   Yes, sir.                                             22:43
3   A.   -- or the seat back that the carrier is installed on? 22:44
4   Q.   The seat in front of the carrier.                     22:44
5   A.   It would, I don't believe there's anything in our     22:44
6   records that has that kind of testing with interaction with
7   the seat in front of the carrier --
8   Q.   Okay.                                                 22:44
9   A.   -- in the vehicle.                                    22:44
10  Q.   All right.  So would it be fair to say that any, any  22:44
11  results or testing or information that you might have had
12  about what happens to this system in the event of interaction
13  between a seat back -- I'm talking about a seat in front of
14  the carrier, not the one that it's seated on -- and the
15  carrier itself would have had to come from field experience
16  or from information being received from other sources,
17  correct?
18  A.   Or prior work by the company.                         22:44
19  Q.   Okay, but in connection with this system, it would have 22:44
20  to be prior work by the company, but unrelated to this
21  system?                                                    22:44
22  A.   It would be prior work from the company that -- that's 22:44
23  part, that's part of the body of experience that we use when
24  we go into the design of the system.
25  Q.   Okay.                                                 22:44

Page 66

| | | |
|---|---|---|
| 1 | A. So while the prior work may not have actually used an | 22:44 |
| 2 | Embrace, it would be prior work that we would rely on for the | |
| 3 | design of the Embrace. | |
| 4 | Q. Okay. Now, on Exhibit 2, there's also a section that | 22:45 |
| 5 | talks about "the latch hook retains set to base or stroller". | |
| 6 | Do you see that part? The potential failure mode is the | 22:45 |
| 7 | latch -- | |
| 8 | A. Do you have a page number, at the top? | 22:45 |
| 9 | Q. Oh, actually, I took bad notes, but the potential | 22:45 |
| 10 | failure mode is "latch hook does not retain seat to base". | |
| 11 | Do you see that one? | |
| 12 | A. "Latch hook retains seat to base and/or stroller" -- | 22:45 |
| 13 | Q. Yeah. | 22:45 |
| 14 | A. -- is that the one? | 22:45 |
| 15 | Q. Yes. | 22:45 |
| 16 | A. I did find that. | 22:45 |
| 17 | Q. And just so I understand, because I wasn't clear when I | 22:45 |
| 18 | read this, "latch hook", are we talking about the red hook | |
| 19 | that we've been discussing? | |
| 20 | A. They're talking about here the red hook on the release | 22:45 |
| 21 | handle -- | |
| 22 | Q. Okay. | 22:45 |
| 23 | A. -- on the carrier. | 22:45 |
| 24 | Q. All right. And one of the potential failure modes that | 22:45 |
| 25 | was considered in 2004 in connection with this car seat | |

Page 108

1  you know of or that's been produced that looks at those
2  issues, correct?  So when you say "sled testing", we look at,
3  we know our product, everything we've talked about prior to
4  getting to this point is inclusive and exclusive of what
5  you'd be referring to, correct?
6  A.  Which do you mean, "inclusive", "exclusive"?                    23:49
7  Q.  Would be inclusive.  Sorry.  I didn't mean to -- it's           23:49
8  inclusive of what you would be talking about when you said
9  we've looked at our product?
10 A.  We've looked at our product and we've looked at, you            23:49
11 know, we've looked at past performance of other products as
12 well, so we have, we have many years of history making child
13 restraints.
14 Q.  So in the context of looking at any other possibilities         23:49
15 for an unintentional unlatching in investigating any of the
16 three claims we've talked about so far, when you look at,
17 when you talk about looking at or testing our system, we are
18 talking exclusively about everything we've talked about to
19 this point in this deposition, correct?
20 A.  Which would include our history as a company, making a          23:49
21 two-piece carrier and base type system since 1991.
22 Q.  Okay, all right.  Now, let's talk about the next claim.         23:50
23 The next claim is, and it will be marked as Exhibit Number 7,
24 this is identified as your report 25152.  Am I identifying
25 that correctly?

1  C E R T I F I C A T E

2  STATE OF OHIO        )
   COUNTY OF MONTGOMERY ) SS:
3

4      I, Connie F. Scott, the undersigned, a duly qualified
5  and commissioned Notary Public within and for the State of
6  Ohio, do hereby certify that prior to the giving of the
7  aforesaid deposition, the within named RANDOLPH L. KISER was
8  by me first duly sworn to testify to the truth, the whole
9  truth, and nothing but the truth, that the foregoing pages
10 constitute a true and correct transcript of testimony given
11 at said time and place by said deponent, that said
12 deposition was taken by me in stenotypy and transcribed
13 under my supervision, that I am neither a relative of nor
14 attorney for any of the parties to this litigation, nor
15 relative of nor employee of any of their counsel, and
16 have no interest whatsoever in the result of this
17 litigation, and am not nor is the court reporting firm for
18 which I am affiliated under a contract as defined in Civil
19 Rule 28(D).
20     IN WITNESS WHEREOF, I have hereunto set my hand and
21 official seal of office at Dayton, Ohio on this _____ day
22 of _____, 2011.
23
24                                  _____
                                    Connie F. Scott
25                                  My Commission expires:
                                    May 27, 2014