

JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276
BENSON & BINGHAM
11441 Allerton Park Drive, Suite 100
Las Vegas, NV 89135
(702) 382-9797, telephone
(702) 382-9798, facsimile
litigate@bensonbingham.com

LARRY W. LAWRENCE, ESQ.
Texas Bar No. 794145
LAWRENCE LAW FIRM
3112 Windsor Rd., Suite A234
Austin, TX 78703
(956) 994-0057, telephone
(956) 994-0741, facsimile
lawrencefirm@aol.com

RICARDO A. GARCIA, ESQ.
Texas Bar No. 7643200
JODY R. MASK, ESQ.
Texas Bar No. 24010214
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
(956) 630-2882, telephone
(956) 630-2882, facsimile
ric@gomlaw.com
jody@gomlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW R. LINDNER, individually; as surviving spouse and legal heir of ELSY LETICIA GRANADOS-MARTINEZ, deceased; as surviving parent and legal heir of CAMILA LYNETE LINDNER, a deceased minor; and as Guardian Ad Litem of PAULINA GRANADOS-MARTINEZ, a minor; FERNANDO GRANADOS-MAGALLON, individually and as surviving spouse and legal heir of REFUGIO LETICIA MARTINEZ COSIO,<br><br>Plaintiffs, | CASE NO.: 2:10-cv-00051-LDG-VCF |

200329



1  vs.
2  FORD MOTOR COMPANY, a Delaware corporation; BERTHA MEZA d/b/a OROZCO AUTO SALES; EVENFLO COMPANY, INC., a Delaware corporation; BIG LOTS STORES, INC., an Ohio corporation; DOES I through XX, inclusive and ROE BUSINESS ENTITIES I through XX, inclusive,

    Defendants.

### PLAINTIFF'S OPPOSITION TO DEFENDANT EVENFLO COMPANY, INC.'s MOTION IN LIMINE TO EXCLUDE EVIDENCE THAT DR. HOFFMAN'S TESTIMONY IS TIED TO THIS CASE [Motion No. 1]

Plaintiff MATTEW R. LINDNER, Individually and as surviving parent and legal heir of CAMILA LYNETTE LINDNER, a deceased minor, through his attorneys, Joseph L. Benson, II of BENSON & BINGHAM, Larry W. Lawrence, Jr. of THE LAWRENCE LAW FIRM, and Ricardo A. Garcia of GARCIA, OCHOA MASK, LLP, hereby submits his Opposition to EVENFLO MOTOR COMPANY, INC.'s Motion in Limine to Exclude Evidence that Dr. Hoffman's Testimony is Tied to this Case [Motion No. 1]. This opposition is made and based upon the Memorandum of Points and Authorities that follow below, the papers and pleadings on file herein, and any oral argument entertained by the Court.

DATED this 29th day of June, 2015.

BENSON & BINGHAM

/s/ Joseph L. Benson II
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276

Attorneys for Plaintiffs

200329

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

Defendant EVENFLO requests an order excluding the testimony of various aspects of Arthur Hoffman.

To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Phillips v. C.R. Bard, Inc.*, 2015 U.S. Dist. Lexis 7513, *6 (D. Nev. Jan. 20, 2015) quoting *Ind. Ins. Co. v. G.E.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be solved in the proper context." *Hawthorne Partners v. AT&T Tech,, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is always better suited during actual trial to assess the value and utility of evidence." *Wilkins v. K mart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

### a. TESTING RELATED TO OTHER MODEL CAR SEATS

Dr. Hoffman (and Plaintiff's other experts) should be allowed to reference tests and any conclusions Evenflo made concerning any of its other two piece model child seats. Within its development and design of the Embrace system, Evenflo identified inadvertent unlatching of the carrier from its base as a danger that could result in serious injury to a child. Deposition of Randolph Kiser ("Kiser Depo"), p.36:06-39:24; 63:01-63:05 which is attached hereto as **Exhibit A**. The Embrace is a rearward facing two-piece system whose release handle faces the front passenger seatback and whose release lever is exposed and unguarded. Evenflo admittedly conducted no testing, or other type of analysis, to determine whether interaction with the front passenger seat back or some other projectile during a crash could result in actuation of the unguarded release handle and

a carrier/base separation. Kiser ("Kiser Depo"), p. 49:13-53:01; 57:20-58:14; 59:02-59:16; 61:22-62:14.

As outlined in Kiser's deposition, none of the FMVSS 213 protocols for the Embrace provide for testing the danger of unintended release of the carrier from the base. Therefore, compliance with 213 does not answer the underlying safety concern over whether the system is vulnerable to a carrier base separation by actuation of the release handle. Evenflo admitted it recognized this danger and yet none of its testing for the subject car seat contemplated looking at its performance under the reasonably foreseeable circumstances where the lever might be unintentionally depressed. Rather than admit that it stuck its head in the sand, Evenflo's corporate representative claimed a reliance on all prior knowledge, designs, tests and field reports regarding other child car seat models manufactured and sold by it to inform it the Embrace had no such defects. **Exhibit A**, Deposition of Randolph Kiser ("Kiser Depo"), p. 35:15-23, pp. 65:18 – 66:3, p. 108:7-13.

Evenflo cannot have its cake and eat it too. It cannot excuse its failure to tests against a recognized danger by its reliance on a knowledge based from other products and then ask the court to prohibit by way of motion in limine the Plaintiff from presenting what "knowledge" it is based upon, including the failure of other two piece Embrace systems due to separation of the carrier from the base.

    b.    <u>SUPPLEMENTAL STRAP AND THE VOLUNTARY RECALL OF THE DISCOVERY</u>

Dr. Hoffman should be allowed to testify that an "interim fix" to prevent separation of the child seat due to inadvertent activation of release lever causing unintended separation is the use of a safety strap. *Deposition of Arthur Hoffman ("Hoffman Depo),* p. 112:11-24, pp. 204:11 – 205:12, which is attached as **Exhibit B.** Evenflo's Discovery model infant car seat is a two piece system similar to that of the Embrace, which is marketed and sold during the same time frame. As with the Embrace, the Discovery was subjected to the much vaunted FMVSS 213 tests protocols Evenflo

4

wants to shield itself behind. Evenflo's reliance on FMVSS 213 for the efficacy of the Discovery model was as misplaced as it was for the Embrace's two piece system. In the Discovery model, numerous field reports suggested a problem of unintended separation occurring in side impact collisions. Evenflo steadfastly denied a problem until testing under real world crash conditions forced it to accept that a problem existed and Evenflo finally agreed to take some action to guard against a danger its own design analysis had failed to detect. Evidence of the Discovery model recall and its remedy are relevant to the question of whether FMVSS 213 and Evenflo's design protocols are sufficient to test against the inherent danger of carrier and base separations which can occur in foreseeable real world conditions and to whether a reasonable and affective remedy was available to Evenflo to guard against unintended actuation of the release lever.

c. **ALTERNATIVE DESIGNS**

Dr. Hoffman offered in his deposition that Evenflo's own Discovery model presents a better design for protecting against unintended actuation of the release lever. Although the Discovery has other problems revealed by real world testing, its release handle configuration provides better protection from an unintended actuation than the subject Embrace. As indicated by the 9th Circuit in reversing the summary judgment in this case, Nevada has adopted the Restatement 2d for products liability which is the consumer expectations tests. This paradigm does not require the Plaintiff to prove and present a safer alternative design. However, showing the Discovery configuration at least shows how Evenflo could have better protected the release lever from being impacted, whether it come from interaction from the seat back or a projectile during the rollover. In his deposition, Dr. Hoffman further offered several other alternatives, including a protective shell or turn blocker (like those found in airline trays) that would have guarded against an unintended actuation. These are all relevant to showing why a failure to guard the Embrace's release lever is a defect.

. . . .

e. **CARRIER BASE DESIGN**

Dr. Hoffman states in his deposition that the danger of a carrier/base separation is inherent in all two piece systems. This is not an opinion but a statement of simple fact. One piece car seats which are secured to the vehicle using the vehicle seatbelt do not have the risk of separation present within two piece systems like the Embrace. You do not have to be an expert qualified under Rule 702 to state the obvious.

Evenflo claims FMVSS 213 somehow protects it against Dr. Hoffman even uttering the words "inherently defect" as it related to the Embrace's two piece configuration. The deposition of Evenflo's corporate representative discussed in detail above, as well as Dr. Hoffman's deposition, makes clear that FMVSS 213 does not test against circumstances where unintended actuation of the release lever can occur. None of 213's test protocols are set up to see what happens if the release lever of the carrier interacts with a seat back or is impacted by a projectile moving about within the vehicle. Moreover, FMVSS 213 does not simulate real world rollover conditions. The one test that actually puts the carrier and base in an inverted condition, as would occur during the "wheels up" phase of any rollover, is the airline inversion tests. The inversion test in no way exposes the system to the dangers of seat back interaction or application of a force to the release lever by any moving objects within the vehicle during a rollover. It merely checks to see if the latching system will hold the weight of the carrier and baby for a number of seconds. Nothing is done during the airline test to see how much force is needed to release the carrier when it is in the inverted position. As can be demonstrated simply with an exemplar Embrace, it takes almost no force at all to actuate the lever when the system is in the inverted position.

Evenflo wishes to hide behind its compliance with FMVSS 213 to preclude any testimony by Dr. Hoffman that its two piece design is inherently dangerous. Implicitly, Evenflo's argument is that it had no duty to take any steps to design and market its products that were not required by the Federal

Motor Vehicle Safety Standards. However, FMVSS standards are nothing more than "minimum standards" and do not conclusively establish that a product was not defective. See Durham v. County of Maui, 696 F. Supp. 2d 1150, 1152 (D. Haw. 2010); O'Hara v. GMC, 508 F.3d 753, 761 (5th Cir. 2007). In fact, the Safety Act itself, under which FMVSS 213 and the other safety testing standards are promulgated belies Evenflo's argument that doing the bare minimum required by the Safety Act insulates Evenflo from liability under Nevada Common Law. The Act provides: "Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e).

The dispute in this case is not Evenflo's regulatory compliance, but rather, whether the seat was unreasonably dangerous and defective as designed and marketed applying the "consumer expectations test" applicable under Nevada common law. That is a matter for the jury to determine. And while compliance with federal crash testing standards might be relevant evidence, it is not conclusive. Also relevant would be the failure to test the seats to determine how they would perform in a rollover so that Evenflo could design them to be reasonably safe under the consumer expectations test or adequately warn consumers about the dangers.

These same issues were discussed over several opinions from the Justices of the Montana Supreme Court in Malcolm v. Evenflo Co., 217 P.3d 514 (Mont. 2009). In Malcolm, the court reversed an award of punitive damages not because there was insufficient evidence to support them. Rather, the court's opinion details the various ways in which Evenflo failed to conduct side-impact testing and rollover testing after receiving notice of product failures in similar products in these types of accidents. Rather, the court reversed the award of punitive damages because the trial court abused its discretion by prohibiting Evenflo from introducing evidence of the car seat's compliance with FMVSS 213's frontal crash test standard for the purposes of considering the appropriateness of punitive damages. Id. at 532.

In a separate opinion, concurring in part and dissenting in part, Justice Nelson explained the significance of Evenflo's history of doing the bare minimum in its testing and design process, and the relevance of this evidence to a products liability trial that includes a claim for punitive damages:

Evenflo's conduct surrounding the testing and recall of the model 206 constituted relevant evidence regarding Evenflo's state of mind with respect to its sale of the model 207. [citations omitted] Evenflo's state of mind represented a key element in determining whether Evenflo had acted with actual fraud or actual malice. The District Court acted within its discretion when it determined that evidence surrounding the recall and testing of the OMW model 206 was relevant for the purposes of determining punitive damages. Id. at 526. Particularly relevant to this particular Motion in Limine, Justice Nelson specifically explained the relevance of Evenflo's failure to conduct rollover testing of its car seats: Indeed, while it purportedly was complying in "good faith" with FMVSS 213, Evenflo knew the following: that mere compliance with the minimum requirements of the standard "is not enough," particularly where a danger exists beyond the minimum that the standard was designed to meet; that NHTSA wanted Evenflo's child restraints to "perform above the minimum requirements"; that FMVSS 213 addressed only frontal collisions; that the OMW seat's open belt hook design had failed in a number of rear-impact, side-impact, and rollover accidents; and that Evenflo, therefore, needed to go beyond the minimum requirements of FMVSS 213 in its design of the OMW seat. Evenflo also knew how to test its safety seats in rollover crash scenarios, but Evenflo never chose to conduct rollover tests on the OMW seats. Rather, Evenflo was content to do only the bare minimum; and it only did that much because it could not have sold the OMW seat otherwise. Id.

The Montana Supreme Court's opinion regarding Evenflo's misplaced reliance on FMVSS 213 as a shield against Dr. Hoffman's defect claims lays it out well. Dr. Hoffman's defect opinion is based on the fact that the red release handle is exposed and unguarded in a system that has the inherent danger of a separation not present with one piece systems. This vulnerability to separation becomes

particularly acute during a rollover because of the effect of gravity, inertial forces acting upon the system as it moves about during the roll sequence; and the ease with which the release handle can be actuated by interaction with the seat back or some other object. Certainly its proximity to the seat back is a likely candidate for interacting with the red release handle as offered up by Dr. Hoffman in his deposition. However, the work of other experts, Don Stevens in accident reconstruction and John Smith in biodynamics, proffers that projectiles moving about inside the vehicle, including a diaper bag in the floor board directly beneath the carrier are just as likely candidates given how little force is actually required to move the release lever.

Evenflo is attempting by this limine to do exactly what it did in its summary judgment motion and limit Dr. Hoffman's ability to relay his criticism of two piece infant carrier systems and in particular, the design flaws with the Embrace when it comes to unintended actuation. As the 9th Circuit held, it is not necessarily for Plaintiff to demonstrate what specifically depressed the handle but rather, its actuation occurred and could have been guarded against with a proper design. Within this opinion is the premise that a two piece system carries with it the inherent risk of detachment, a problem Mr. Kiser/Evenflo admits to in this case. This problem of release lever actuation is "inherent" with any child restraint system where no protection is provided to prevent it.

Plaintiffs will lay an appropriate predicate for the admissibility of Dr. Hoffman's design defect opinions during trial. Evenflo's Motion in Limine 1 should be denied.

DATED this 29th day of June, 2015.

BENSON & BINGHAM

/s/ Joseph L. Benson II
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFF'S OPPOSITION TO EVENFLO MOTOR COMPANY, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE THAT DR. HOFFMAN'S TESTIMONY IS TIED TO THIS CASE [MOTION NO. 1]** was made this date by electronic service to the following:

Rosemary Missisian, Esq.
WEINBERG, WHEELER, HUDGINS,
    GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV 89118
Attorney for Defendant,
Evenflo Company, Inc.

Charles L. Clay, Jr., Esq.
CHUCK CLAY & ASSOCIATES
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30303
Attorney for Defendant,
Evenflo Company, Inc.

Dan H. Ball, Esq.
Richard P. Cassetta, Esq.
BRYAN CAVE
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Attorney for Defendant,
Evenflo Company, Inc.

Larry W. Lawrence, Jr., Esq.
LAWRENCE LAW FIRM
3112 Windsor Road, Suite A-234
Austin, TX 78703
Attorney for Plaintiffs

Ricardo A. Garcia, Esq.
Jody R. Mask, Esq.
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
Attorney for Plaintiffs

DATED this 29 day of June, 2015.

_____
An employee of BENSON & BINGHAM