Rosemary Missisian, Esq.
Nevada Bar No. 8575
WEINBERG, WHEELER, HUDGINS,
GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:   (702) 938-3838
Facsimile:   (702) 938-3864
rmissisian@wwhgd.com

Charles Lloyd Clay, Jr., Esq.
*Admitted Pro Hac Vice*
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA  30303
Telephone:   (404) 949-8118
chuck@chuckclay.com

Dan H. Ball, Esq.
*Admitted Pro Hac Vice*
Richard P. Cassetta, Esq.
*Admitted Pro Hac Vice*
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:   314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com
*Attorneys for Defendant*
EVENFLO COMPANY, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW R. LINDNER, et al.,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>FORD MOTOR COMPANY,  et al.,<br><br>                    Defendants. | Case No. :       2-10-CV-0051-LDG-LRL<br><br>**DEFENDANT EVENFLO COMPANY, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTIONS *IN LIMINE*** |

Evenflo Company, Inc. ("Evenflo"), hereby files its Reply in Further Support of its Motions *in Limine*. Plaintiff did not oppose eleven of Evenflo's motions in limine, and the Court should therefore grant those motions.[1] As to the Evenflo motions *in limine* for which Plaintiff has filed an opposition, those motions should be granted for the reasons set forth below and in Evenflo's opening brief.

### 1. Dr. Hoffman's Testimony Not Tied to This Case

#### (a) Evidence About Other Model Car Seats

This case is about the Embrace car seat. Evidence related to the design, testing, and recalls of other car seats, whether manufactured by Evenflo or a competitor, is irrelevant. In order for evidence related to other model car seats to be admissible, Plaintiff has the burden of proving substantial similarity. *See Barker v. Deere and Co.*, 60 F.3d 158, 162 (3rd Cir. 1995). Plaintiff has no evidence that other car seats are substantially similar to Embrace, including, in particular, substantially similar in terms of the design of the release lever or carrier-base attachment. Additionally, evidence is not admissible if there are dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

In this case, Plaintiff seeks to introduce evidence about other model car seats, in particular the Evenflo Discovery model. Plaintiff failed to put forward any evidence that the design of the Embrace is substantially similar to the design of the Discovery. On the other hand, Evenflo has put forward evidence that the design of the two car seats is not substantially similar.[2] Because of the uncontroverted evidence that the Embrace and

---

[1] Plaintiff did not oppose the following motions *in limine*: (1)(d) Inertial Unlatching; (1)(f) Alleged Problems With Injection Molding; (2) Police Report/Seatbelt Use; (8) Hearsay Articles Not Related to Embrace; (9) Discovery Issues; (11) Financial Circumstances of the Parties; (12) Insurance; (15) Conscious Pain and Suffering by Camila Lindner; (16) Settlement Discussions; (17) References to the Location, Size, or Expertise of Law Firms; and (18) References to Evenflo's Ownership.

[2] See, Affidavit of Eric Dahle, Exhibit 1 to Evenflo's Motions *in Limine* [Dkt. No. 120-1].

1  Discovery are not substantially similar, no reference to the Discovery should be permitted
2  at trial.
3        The substantial similarity test requires proof not only of substantially similar
4  products, but also substantially similar accident conditions. *See Daniel v. Coleman Co.,*
5  *Inc.,* 599 F.3d 1045 (9th Cir. 2010); *see also Barker v. Deere and Co.,* 60 F.3d 158, 162
6  (3rd Cir. 1995). Randolph Kiser, the former Director of Product Safety, Research, and
7  Development at Evenflo, testified in very general terms that Evenflo relies, in part, upon
8  past performance of other model car seats when considering the extent of testing needed
9  for new products. Plaintiff contends that testimony permits him to present evidence about
10 any car seat Evenflo ever produced. However, Plaintiff has no evidence that these other
11 models experienced inadvertent detachment because of the release lever being struck by
12 the seat back or another object. Inadvertent detachment based upon contact with the
13 release lever is Plaintiff's sole defect theory in this case. Thus, the design and testing of
14 other child car seats without any evidence of those seats experiencing this type of
15 inadvertent release is irrelevant, unfairly prejudicial, offered specifically to confuse the
16 issues at bar, misleading the jury, likely to cause undue delay, and therefore inadmissible
17 under Rules 401, 402, and 403 of the Federal Rules of Evidence.

18       (b) **Supplemental Strap and the Discovery's Voluntary Recall/Retrofit**

19       For the same reasons discussed above, Plaintiff should not be permitted to
20 reference a 2008 voluntary recall/retrofit program for the Discovery Model 390/391 car
21 seat, which included a supplemental strap retrofit sent to customers. Plaintiff has failed to
22 establish that the Embrace and Discovery are substantially similar or that the supplemental
23 strap, a retrofit designed to address the Discovery Model 390/391's propensity to detach in
24 certain high speed side-impact tests, is in any way relevant to the issues in this case. As
25 Evenflo explained in its opening brief, recall notices (particularly those involving entirely
26 different products and addressing entirely different failure modes/purported defects) and
27 the associated field remedy retrofits are not admissible. *See, e.g., Vockie v. Gen. Motors*

*Corp., Chevrolet Div.*, 66 F.R.D. 57, 61 (E.D. Pa. 1975) (explaining that "recall notices are not admissible to prove that a particular automobile contained the defect towards which the recall was directed," especially in light of strong public policy concerns); *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985) (excluding evidence of a product recall for the 1986 model, when the vehicle at issue was the 1987 model); *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 225 (6th Cir. 1996) (reversible error to allow evidence regarding Caterpillar's model D10 bulldozer in case involving model D9H).

In this case, Plaintiff should not be permitted to discuss a product recall and the associated field remedy of a different model car seat (Discovery), with a different type release handle and different type of carrier-base attachment, which experienced problems in a different type of accident scenario (side-impact vs. rollover). Evidence related to the Discovery recall would have no probative value and carry tremendous prejudice.

This Court should not stray from its earlier decision to make this case about the Embrace and not other models of car seats.[3] Thus, all evidence related to the Discovery and its recall must be excluded pursuant to Federal Rules of Evidence 401-403.

(c) **Alternative Designs**

Plaintiff has raised three types of purported alternative designs that would allegedly better protect against unintended actuation of the release handle: (1) the design of the current Discovery V model; (2) adding a protective shield; or (3) a "turn blocker" like the ones found in airline trays. Alternatives (2) and (3) are inadmissible because Dr. Hoffman never designed, tested, or used these alternatives. He also has presented no evidence that these purported designs would have prevented the detachment in this case. Accordingly, these purported alternative designs are inadmissible under Rule 702 of the Federal Rules of Evidence.

Dr. Hoffman's reliance upon the alternative design of the Discovery V release

---

[3] See Order Denying Plaintiff's Motion to Compel Discovery, dated January 5, 2011 [Dkt. No. 43] at 3.

handle is impermissible as a matter of law because the relevant inquiry in an alternative design case is the existence of an alternative design at the time the subject product was manufactured. "[A]lternative safer designs that existed *at the time the product at issue was made* are admissible to show that the product could have been made without the defect." *Robinson v. G.G.C., Inc.*, 107 Nev. 135, 141, 808 P.2d 522, 526 (1991) (emphasis added). "Under Nevada law, evidence that a product lacked adequate safety features or that a safer alternative design was feasible *at the time of manufacture* will support a strict liabilities claim." *Fyssakis v. Knight Equip. Corp.*, 108 Nev. 212, 214, 826 P.2d 570, 572 (1992) (emphasis added).

Here, Dr. Hoffman attempts to rely upon a design change in the Discovery that occurred *after* the subject Embrace was manufactured.[4]   Designs that came into being after the subject product were manufactured are irrelevant under Nevada product liability law.  Accordingly, Dr. Hoffman's alternative design theory must be excluded pursuant to Federal Rules of Evidence 401-403.

**(d) Carrier-Base Design [Evenflo MIL 1(e)]**

One of Dr. Hoffman's criticisms of the design of the Embrace is the fact that it uses a two-piece carrier-base design.  He states that this design makes the Embrace defective.  However, he does not use a reliable methodology for reaching that opinion.  In his Rule 26 report of April 23, 2011, Hoffman states the basis for his opinion:

> "The two-piece "convenience" infant restraint systems have a safety recall record that exceeds all of the recalls of all other child restraint systems.  The two primary recalls were for carrier-to-base detachment, and the other was for defective carry handles that dis-engaged and dumped the infant to the ground.  For example there were five safety recalls, by various manufacturers from 1998 to 2004 that total ten million units.  Since 2004 there have been millions more."

See Report at Exhibit 2, p. 3.  Thus, Hoffman's methodology and basis for opining that the

---

[4] Selected portions of Deposition of Hoffman, pg. 207, lines 1-5, attached hereto as Exhibit 1.

Embrace carrier-base design is defective is based on undefined recalls of other child seats, some by other manufacturers, and relating to undefined issues that are not tied to the alleged defect in this case. The Embrace never has been recalled for detachment issues. The Embrace never has been recalled for any issue with the release lever.

Rule 702 and the cases under *Daubert* make it clear that to be admissible, an expert opinion must be more than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993). Under *Daubert* judges must scrutinize the expert's methodology. *Id.* at 595. A conclusory opinion without a reliable scientific or technical basis is not admissible. *G.E. v. Joiner,* 522 U.S. 136, 146 (1997); see also *Cabrera v. Cordis Corp.,* 134 F.3d 1418, 1423 (9th Cir. 1998) ("An opinion based on such unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702."); *Lust By & Through Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 597 (9th Cir. 1996) (causation expert in a products liability action failed to convince the district court that his methodology was scientific, since he did not explain "how he went about reaching his conclusions and… point[ ] to an objective source demonstrating that his method and premises were generally accepted by or espoused by a recognized minority of teratologists.")

Plaintiff and Hoffman have come forth with no evidence to show that the carrier-base design of the Embrace is defective. The methodology set forth in his report based on unrelated recalls of unrelated seats involving unrelated design issues is not reliable and is not adequate to meet the standards of admissibility. Hoffmann should be prohibited from criticizing the Embrace carrier-base design.

2.  **Other Incidents/Injuries [Evenflo MIL No. 3]**

In response to this motion *in limine*, Plaintiff does not dispute that other incidents are only admissible if there is a showing by competent evidence that the other incidents were substantially similar to the accident that is the subject of this lawsuit. Plaintiff has no competent evidence of substantial similarity. For example, Plaintiff has no competent

evidence that the detachments in any other incidents were caused by the release handle of the Embrace coming into contact with the front seat back, which is Plaintiff's sole defect theory in this case. Also, Plaintiff has no competent evidence about the nature of the rollover in the other incidents and the forces applied to the carrier-base attachment to demonstrate substantial similarity. In addition, as stated in Evenflo's motion *in limine*, these other incidents are not admissible to show notice because Evenflo is not contending in this case that it did not have notice before 2006-2008 that a carrier could become detached from its base in some unusual circumstances.

Plaintiff cites *White v. Ford Motor Company* for the proposition that the customer reports were "admissible under the business records exception" to hearsay. *White v. Ford Motor Co.,* 312 F.3d 998, 1009 (9th Cir. 2002) *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003). [Dkt. No. 131]. What Plaintiff fails to mention is that the U.S. Court of Appeals for the Ninth Circuit did not reach the issue of whether the trial court erred in admitting the customer reports in *White* because other evidence had already been admitted of similar incidents (government reports and expert testing). Thus, the Court reasoned that the admission of the customer reports was "harmless" because they would not have swayed the jury in light of the other evidence that came in on the similar incidents. In addition, in *White,* the plaintiff presented testimony of a witness with first-hand knowledge of an incident. *Id.* at 1009. Plaintiff in this case has no such testimony. In addition, notice was an issue in *White.* Notice of potential detachment is not an issue in this case.

A product liability case in this district against an airbag manufacturer, *Thompson v. TRW Auto, Inc.,* Case No. 2:09-cv-1375-JAD-PAL, 2014 U.S. Dist. Lexis 75562 (June 2, 2014) (Hon. Jennifer Dorsey)[5], is on point. In that case, the court held that customer reports were hearsay within hearsay, and did not fall within any hearsay exception such

---

[5] Attached hereto as Exhibit 3.

that they would be admissible. *Id.* at *41-42 (D. Nev. June 2, 2014). *See also Wolf by Wolf v. Proctor & Gamble Co.,* 555 F. Supp. 613, 620 (D.N. J. 1982) (holding telephone log of complaints inadmissible because, even if the log was a business record, the complaints within the log were hearsay not within any exception).

A review of the incident reports of alleged rollover detachments that were produced in this case reveal that they are not admissible because of the same evidentiary problems. For example, in Incident Report # 24524,[6] the consumer reported to Evenflo that the carrier became detached from the base in a rollover event. *Id.* at 2. According to the consumer, the car seat was not visibly damaged or broken. *Id.* The consumer claims he lost control of his vehicle, hit a telephone pole, and rolled over. *Id.* at p. 2. The child was "taken to the ER as a precaution." *Id.* at 3. The consumer told Evenflo he wanted the seat replaced, and he also wanted to know what Evenflo would do for his son's "pain and suffering." These statements are all hearsay within the Evenflo document. There is no hearsay exception that makes these statements admissible.

Evenflo inspected and tested the seat, and determined that the carrier correctly latched to the base (a test Evenflo repeated 20 times). *Id.* at 6; Deposition of Kiser at 112-117, Exhibit 5. There was no physical evidence to explain the detachment. Therefore, Evenflo was unable to corroborate the caller's allegation of an inadvertent detachment of a properly installed unit. Incident Report (Exhibit 4) at 6; Kiser Depo, Ex. 5, at 112-117.

In addition to Incident Report #24524 being inadmissible because it is hearsay and contains hearsay within hearsay, it is not substantially similar to the incident in this lawsuit. In the subject case, unlike Report #24524, (i) there is a plethora of undeniable physical evidence associated with the carrier and base; (ii) all experts agree that the carrier and base were, in fact, properly attached when the accident began; and (iii) an unbelted occupant was sitting next to the child seat.

---

[6] The seven incident reports involving an alleged rollover detachment with the Embrace are attached hereto as Exhibit 4.

1   All of the six other alleged rollover detachment incident reports are similarly inadmissible because they are not supported by competent evidence. With respect to three of the incident reports (25152, 25689, and 25881), despite Evenflo's requests that the consumer ship the car seats back to Evenflo for inspection and testing at Evenflo's expense, the consumers never shipped the car seats back. With respect to the other three incident reports in which the car seats were shipped back to Evenflo for inspection (Incident Report # 2163, Incident Report # 21770, and Incident Report # 23504), Evenflo determined that the carrier was likely not securely attached to the base prior to the accident because, unlike the instant case, there was an absence of any evidence of loading on the car seat (Incident Report #s 2163 and 23504), or that the carrier was improperly attached (Incident Report #21770).

All of the incident reports also contain multiple levels of hearsay. For example, the caller in Incident Report #25152 never identified herself, and reported that "[w]hen EMS arrived at the scene, carseat was outside of vehicle and infant was laying on wet and muddy ground crying."[7] This is a third level of hearsay. Although there was an allegation of a detachment, that allegation was never corroborated by any competent evidence.[8]

Because these incident reports are hearsay and contain hearsay within hearsay and because the allegations of detachment are not supported by any competent evidence, reference to the other incidents would be unduly prejudicial. There has been no showing that these alleged rollover detachments are substantially similar to the incident in this case. Therefore, the Court should grant Evenflo's motion *in limine* and preclude any reference to other incidents.

---

[7] Incident Report 25152, Ex. 4, at p. 1.

[8] Kiser Depo, Ex. 5, at p. 109-112.

### 3. Other Lawsuits [Evenflo MIL No. 4]

In response to Evenflo's motion *in limine* to exclude evidence of other lawsuits, Plaintiff discusses a number of product recalls and suggests that those recalls somehow provide support for Plaintiff's contention that he should be allowed to discuss other lawsuits at the trial in this case. [Dkt. No. 129]. First, it should be noted that Evenflo is unaware of any other lawsuit involving the Embrace 5, the car seat at issue in this lawsuit. Plaintiff has identified no other lawsuits he intends to introduce into evidence. Plaintiff has also failed to come forward with evidence that lawsuits involving other car seats have any relevance to the issues in this case, and, therefore, any reference to other lawsuits should be precluded under Rules 402 & 403 of the Federal Rules of Evidence.

As to the nine product recalls that Plaintiff mentions in his response to this motion *in limine*, none are admissible. As Evenflo explained in its opening brief, recall notices and field remedy retrofits related to different products are not admissible. *See, e.g., Vockie v. Gen. Motors Corp., Chevrolet Div.*, 66 F.R.D. 57, 61 (E.D. Pa. 1975); *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985); *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 225 (6th Cir. 1996).

Five of the eight recalls referenced by Plaintiff post-date the date of manufacture of the car seat at issue in this lawsuit. Further, only two of the recalls involve an Embrace. The 2007 Embrace recall involving the carry handle is covered by Evenflo Motion *in Limine* No. 5, which Plaintiff does not oppose. The 2014 Embrace recall involved a buckle that did not release easily, making it more difficult to remove the child from the car seat. Neither of the Embrace recalls have any relevance to the issues in this case.

The 2008 recall involving the Discovery Model 390/391 car seat is the subject of a separate motion *in limine* by Evenflo. For the reasons set forth in the Supplemental Strap Motion *in Limine* and the reply above, reference to that recall is irrelevant to the issues in this case and would confuse the issues, mislead the jury, and be unfairly prejudicial to Evenflo.

Despite Plaintiff's representations to the contrary, some of the recalls (for example the 2014 recall involving the Chase, Maestro, Performance, and other models and the 2007 recall of the Triumph) do not involve two-piece car seats at all. None of the recalls involve a problem with the release handle allegedly inadvertently engaging by coming into contact with the front seat back. In other words, Plaintiff has failed to show that any of these recalls involve design issues that are substantially similar to the issues in this case.

For all these reasons, the Court should enter an order *in limine* precluding any reference to other lawsuits.

4. **Smith/Stevens – Cause of Detachment [Evenflo MIL No. 6]**

Plaintiff's response stipulates that Donald Stevens will not be offering any testimony about the cause of the detachment of the carrier from the base. [Dkt. No. 128]. Accordingly, Plaintiff should not oppose an order *in limine* precluding Mr. Stevens from offering testimony on this issue.[9]

Mr. Smith testified that he is deferring to Dr. Hoffman about whether inertial release or contact between the release lever and the seat back caused the detachment in this case.[10] Plaintiff does not dispute this. That deference by Smith alone is a sufficient basis to preclude Smith from testifying about these issues.

Furthermore, Smith admits that he has no opinion to a reasonable degree of engineering probability as to what caused the carrier to detach from the base. For example, when asked at his deposition if he was going to render an opinion at trial as to what caused the detachment, Smith testified:

> A: Not a precise mechanism, but there was—would—was force applied to the handle that cause the—it to become separated from the base, the carrier to come—become separated from the base.
> Q: And you're not sure what applied that force?
> A: There is no way to know. There are too many variables.
> Q: Okay.

---

[9] See Plaintiff's Memorandum in Opposition at p. 3.

[10] *See*, Smith Depo. at p. 15, line 20-line 24 and p. 18, line 20-p.19, line 3, attached hereto as Exhibit 6.

A: I mean, it's an inadvertent release, certainly. But what exactly caused the inadvertent release, we don't know at this point in time.[11]

Plaintiff cites to *Morsicato v. Sav-On Drug Stores, Inc.*, 111 P.3d 1112 (Nev. 2005), in support of his argument that Smith's purported opinions regarding the cause of the detachment should be admissible. [Dkt. No. 128]. The holding in *Morsicato* actually supports Evenflo's position that Smith should <u>not</u> be permitted to offer opinions at trial regarding the cause of the detachment, however. In *Morsicato,* the Nevada Supreme Court reversed the decision of the trial court permitting certain medical causation testimony and held that the causation testimony of the medical expert should have been stricken because "it was highly speculative and failed to meet the admissibility standard." *Id.* at 1116. The Court found that the expert was "not certain what caused Morsicato's injuries," and that the expert had opined that an autoimmune response was the "most likely cause." *Id.* The Court held that the a causation opinion that something was the "most likely cause" was not sufficient—that unless a medical expert can testify to a reasonable degree of medical probability as to what the cause was, his opinion is not admissible.

In this case, Smith does not have an opinion to a reasonable degree of engineering probability about what caused the carrier to become detached from the base. According to Smith, "we don't know at this point in time" what caused the detachment because there are "too many variables." Smith should not be permitted to speculate about hypothetical causes of the detachment.

Though they don't directly bear on the resolution of this motion, Evenflo also must address other comments made in Plaintiff's response. Plaintiff argues that the jury should be allowed to hear evidence of three potential causes: (1) centrifugal force connected with an inertial release; (2) contact of the release handle with the front seatback; and (3) possible contact by some unidentified flying object.

---

[11] Smith Depo at 16:21-17:6, Ex. 6.

No reference should be permitted to (1) and (3) because these theories are not supported by admissible expert testimony. Evenflo should not have to defend allegations at trial that have no evidentiary support.

With respect to inertial release, when asked at his deposition if he had an opinion as to whether inertial release caused the detachment, Smith testified "[n]ow again, I'm going to defer to Dr. Hoffman on that because I did not look at that."[12] It should be noted that Dr. Hoffman testified that he has abandoned any theory that some design defect in the car seat allowed inertial forces to cause the detachment.[13] Thus, any defect allegation related to inertial release has no place in this case.

As discussed above, Smith's theory that some unidentified object inside the Explorer struck the release handle is inadmissible because it is speculative and without foundation and because Smith defers to Hoffman on the cause of the detachment.

Evenflo is prepared to defend the only defect allegation supported by any arguably admissible testimony—Hoffman's theory that the release lever contacted the front seat back. For the Court's benefit, attached as Exhibit 7 are two photographs showing extreme damage to the robust carrier. Evenflo will prove that this damage occurred from severe and unusual forces (the mother's unbelted body) forcefully striking the carrier. These unforeseeable forces caused the detachment. This severe damage is not consistent with the release lever merely being actuated by inadvertent contact with the seat back.

The jury should only consider whether the release lever struck the front seat back or whether it was forced off by severe and unusual forces from the mother's body. The jury should not be allowed to consider inadmissible testimony about inertial release and

---

[12] Smith Depo. p. 18, line 20-p.19, line 3, attached hereto as Exhibit 6.

[13] Hoffman Depo., p.28, line 8-p. 29, line 1, Ex. 3 to Evenflo's Motions *in Limine* [Dkt. No. 123]; see also 2/09/12 Order Granting Summary Judgment [Dkt. No. 62], finding Hoffman's opinion is that the detachment caused by inadvertent separation due to release handle contacting the seat back.

1 unidentified flying objects. This would be confusing to the jury and unfairly prejudicial to
2 Evenflo.

### 5. Ease of Use Ratings [Evenflo MIL No. 7]

In response to Evenflo's motion *in limine* to preclude reference to NHTSA ease of use ratings, Plaintiff cited to the current NHTSA ease of use ratings for an Evenflo Embrace 35 car seat. [Dkt. No. 127]. Plaintiff identified the rating as Exhibit 1 to its response, but failed to attach it. Evenflo has attached the NHTSA current ease of use rating for the Embrace 35.[14] None of Plaintiff's experts have rendered an opinion that the ease of use ratings for the Embrace are evidence that it is defective, and that such a defect caused the detachment in this case. No Plaintiff's expert relied on the ease of use ratings as support for any opinion.

The ease of use ratings are based on four categories: (1) how easy the label on the product is to understand; (2) how easy the instruction manual is to understand; (3) how easy it is to secure the child on the carrier; and (4) how easy it is to secure the base to the vehicle.[15] There is no allegation that Mr. Linder had any difficulty understanding the labelling or instructions or securing the child or the base. Accordingly, the ease of use ratings are irrelevant.[16]

In granting a motion *in limine* to exclude evidence of vehicle ratings in a product liability suit against an airbag manufacturer, the U.S. District Court for the District of Nevada (Hon. Jennifer Dorsey) held, "As the relevancy of the entire vehicle's crash rating does not appear to be relevant, and any marginal relevancy that the rating may have risks jury confusion, the Court grants the motion in this regard and excludes evidence of the Doge Neon's crash rating under FRE 401." *Thompson v. TRW Auto, Inc.*, Case No. 2:09-

---

[14] Attached hereto as Exhibit 8.

[15] Exhibit 8.

[16] In any event, the Embrace had a good ease of use rating (4 stars).

cv-1375-JAD-PAL, 2014 U.S. Dist. Lexis 75562 at *57 (June 2, 2014).[17] In this case, the ease of use ratings should similarly be excluded because they are not relevant to the issues in this case and would lead to confusion of the jury.

### 6. Corporate Conduct [Evenflo MIL No. 10]

Evenflo seeks to preclude through this motion any reference to alleged corporate misconduct by Evenflo not related to the Embrace and any alleged misconduct by any other corporation. Although Plaintiff filed a memorandum in opposition to this motion, he identified no alleged misconduct by Evenflo related to the Embrace, and indeed no misconduct by Evenflo or any other company that he argued was admissible. [Dkt. No. 126]. Rather, Plaintiff refers to testimony by Evenflo employee Randolph Kiser, in which Mr. Kiser gave the unremarkable testimony that in designing a car seat, Evenflo relies upon its prior experience with other car seats.

As discussed above, reference to the design of other car seats is irrelevant, would result in confusion of the issues, mislead the jury, and would be unfairly prejudicial. Accordingly, any reference to alleged corporate misconduct by Evenflo not related to the Embrace and any alleged misconduct by another corporation should be precluded. *See* Fed.R.Evid. 402 & 403.

### 7. Attorney Courtroom Demonstrations [Evenflo MIL No. 13]

Evenflo sought to preclude through this motion courtroom demonstrations by any attorney of any alleged failure or defect mechanism in the Embrace. Plaintiff does not oppose Evenflo's motion to prohibit demonstrations by attorneys of alleged defects. Plaintiff also agrees that demonstrations in front of the jury are proper only after a proper foundation has been established. [Dkt. No. 125].

Evenflo at this time is not seeking to exclude demonstrations by expert witnesses if a proper foundation has been laid establishing that the demonstration replicates the forces and conditions that would exist in a rollover accident such as the one at issue in this case.

---

[17] Attached hereto as Exhibit 3.

The issue of demonstrations by expert witnesses will be addressed at trial if and when a proper foundation has been laid.

### 8. Failure to Perform a Rollover Test [Evenflo MIL No. 14]

Plaintiff should be precluded from referencing a failure by Evenflo to perform rollover testing on the Embrace for the following reasons.

#### a) The lack of rollover testing is irrelevant and would be highly prejudicial

In his memorandum in opposition to this motion *in limine*, Plaintiff states that he does not seek to "offer Evenflo's failure to evaluate the seat's performance in rollover in support of a stand-alone 'failure to test' cause of action.'" [Dkt. No. 124 at p. 3, 6]. Despite this concession, it is clear that Plaintiff wishes the jury to conclude that Evenflo was under some type of legal duty to perform rollover testing, even though Plaintiff's car seat expert, Arthur Hoffman, admitted at his deposition there was no recognized standard for rollover testing.[18]

Plaintiff has no evidence that Evenflo violated any government regulation or industry standard by failing to perform a rollover test on the Embrace. Plaintiff also has no evidence of what protocol Evenflo should have followed in performing a rollover test on the Embrace. Plaintiff also has no evidence that some undefined rollover test would have generated information relevant to this case in view of the myriad of types of vehicles and infinite rollover scenarios to which the Embrace might be exposed. It is unfairly prejudicial to make the inflammatory "failure to test" allegation when there is no such cause of action, no adequate foundation, and no demonstration of relevance.

#### b) FMVSS standards are not the "bare minimum"

Although not critical to the resolution of this motion, Evenflo must correct Plaintiff's mis-statements about the Federal Motor Vehicle Safety Standards, federal

---

[18] Hoffman Depo., pg. 57, line 7 thru pg. 58, line 12, attached hereto as Ex. 1.

1 regulations with the force of law. Plaintiff claims that these are "minimum" standards, implying that they are "minimal," and that compliance with the standards is not evidence of safety. Evenflo will not argue in this case that compliance with these regulations totally precludes the claims in this lawsuit. However, as Plaintiff concedes, the federal regulations are relevant evidence about the safety of the Embrace.

Plaintiff erroneously argues that Evenflo is trying to "hide behind" the "bare minimum" Federal Motor Vehicle Safety Standards. A child seat must achieve certain levels of performance to pass the FMVSS 213 standard. NHTSA has set the levels of performance so as to protect "against unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(8). Plaintiff argues that FMVSS 213 is merely a "minimum" standard. Response at p. 3. However, as NHTSA itself explained this long ago: "Minimum performance standards do not equate with "minimal" performance standards...The word "minimum" in the statutory definition of motor vehicle safety standards does not refer to the substantive content of the standards but rather to their legal status — that the products covered must not fall short of them.[19]

As with all federal motor vehicle safety standards, FMVSS 213 requires a standard of performance sufficient to protect "against unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(8). FMVSS 213 is a demanding standard. The regulation fills 27 pages of the Code of Federal Regulations. It includes strict requirements relating to, *inter alia*, child restraint system integrity, prevention of occupant excursion, head support, torso impact protection, head impact protection, protrusion limitation, ejection prevention, and protective padding.[20] The 30 mph Delta-V sled test portion of FMVSS 213 represents, in NHTSA's own words, "a severe crash." NHTSA, 67 Fed. Reg. 21806, 21809 (2002) (A 30 mph Delta-V is equivalent to a vehicle striking a stopped vehicle of

---

[19] NHTSA, 41 Fed. Reg. 2391, 2392 (1976) (citation omitted).

[20] Evenflo has in fact performed testing on the Embrace far beyond the federal requirement.

the same size at 60 mph with no braking). Indeed, FMVSS 213 testing "is more severe than about 95 percent of all crashes." NHTSA, 66 Fed. Reg. 56126, 56147 (2001). Because FMVSS 213 is *not* a "minimal standard," child restraints compliant with FMVSS 213 "are highly effective in reducing the likelihood of death and/or serious injury in motor vehicle crashes." NHTSA, 68 Fed. Reg. 37620, 37622 (2003).

    c)    **Dicta from one Montana Justice's Dissenting Opinion Lacks any Precedential value**

Plaintiff spends much time discussing the concurring/dissenting opinion in *Malcolm v. Evenflo Co.,* 217 P.2d 514 (Mont. 2009). This opinion is of no precedential value to this Court.[21] Indeed, a dissent *"represents a losing position* and is not binding precedent." *Burrus v. Soto,* No. 13CV1789-LAB WVG, 2015 WL 366459, at *4 (S.D. Cal. Jan. 23, 2015) (emphasis added). In addition, that dissenting opinion adds nothing to the issue in this motion—whether Plaintiff may make "failure to test" allegations. Moreover, factually, the two cases do not involve similar issues. Not only did *Malcom* not involve an Embrace, but the car seat carrier in that case was not attached to a base.

**(d) There is no Post-Sale Duty to Warn in this Case**

Plaintiff cites the *White v. Ford* case, 312 F.2d 998 (9th Cir. 2002), and refers to a post-sale duty to warn. [Dkt. No. 124]. Although the law is unsettled, some cases have found a post-sale duty to warn where some information has become known to the manufacturer after the product was sold and before the accident. This typically occurs when there is a substantial passage of time between the sale and the accident. In this case, the Embrace child seat was purchased only a few months before the accident. There is no

---

[21] See, e.g. Engle v. Liberty Mut. Fire Ins. Co., 402 F. Supp. 2d 1157, 1161 (D. Haw. 2005) ("A federal district court may look to state trial court decisions as persuasive authority, but those decisions are not binding on the federal court"); United States v. Reynard, 473 F.3d 1008, 1021 (9th Cir. 2007) ("concurring comments are not binding"); Bonilla-Montiel v. I.N.S., 91 F.3d 150, 150 n.2 (9th Cir. 1996) ("a concurrence is not binding precedent"); Vargas v. Colvin, No. CV 13-2116-E, 2013 WL 6254784, at *2 (C.D. Cal. Dec. 4, 2013) (defendant's citation to a 'strongly worded" dissenting opinion carried no persuasive weight); Lomack v. Scribner, No. CIV. 07CV17-L (WMC), 2008 WL 509244, at *4 (S.D. Cal. Feb. 21, 2008) ("a dissenting opinion is not binding legal authority").

evidence of any information coming to Evenflo during the period between the sale and the accident that would cause a post-sale duty to warn, even if such a duty existed. For the forgoing reasons, the Court should grant Evenflo's motion *in limine* and preclude any reference to a failure to perform a rollover test.

DATED this 1st day of July, 2015.

*Rosemary Missisian* (signature)

Rosemary Missisian, Esq.
WEINBERG, WHEELER, HUDGINS,
GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV 89118
Telephone: (702) 938-3838
Facsimile: (702) 938-3864
rmissisian@wwhgd.com

Charles Lloyd Clay, Jr., Esq.
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30303
Telephone: (404) 949-8118
chuck@chuckclay.com

Dan H. Ball, Esq.
Richard P. Cassetta, Esq.
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone: 314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com

*Attorneys for Defendant*
*EVENFLO COMPANY, INC.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2015, a true and correct copy of the foregoing **DEFENDANT EVENFLO COMPANY, INC.'S REPLY IN FURTHER SUPPORT OF MOTIONS IN *LIMINE*** was served by e-service, in accordance with the Electronic Filing Procedures of the United States District Court, to the following.

Joseph L. Benson II, Esq.
BENSON & BINGHAM
11441 Allerton Park Drive, Suite 100
Las Vegas, NV  89135
joe@bensonbingham.com
*Attorneys for Plaintiffs*

Larry W. Lawrence, Jr., Esq.
Lawrence Law Firm
3112 Windsor Road, Suite A-234
Austin, TX  78703
lawrencefirm@aol.com
*Attorneys for Plaintiffs*

Ricardo A. Garcia, Esq.
Jody R. Mask, Esq.
Garcia Ochoa & Mask, LLP
820 S. Main St.
McAllen, TX  78501
ric@gomlaw.com
jody@gomlaw.com
*Attorneys for Plaintiffs*

_____
Cynthia S. Bowman
An employee of WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC