JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276
BENSON & BINGHAM
11441 Allerton Park Drive, Suite 100
Las Vegas, NV 89135
(702) 382-9797, telephone
(702) 382-9798, facsimile
litigate@bensonbingham.com

LARRY W. LAWRENCE, ESQ.
Texas Bar No. 794145
LAWRENCE LAW FIRM
3112 Windsor Rd., Suite A234
Austin, TX  78703
(956) 994-0057, telephone
(956) 994-0741, facsimile
lawrencefirm@aol.com

RICARDO A. GARCIA, ESQ.
Texas Bar No. 7643200
JODY R. MASK, ESQ.
Texas Bar No. 24010214
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
(956) 630-2882, telephone
(956) 630-2882, facsimile
ric@gomlaw.com
jody@gomlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MATTHEW R. LINDNER, individually; as surviving spouse and legal heir of ELSY LETICIA GRANADOS-MARTINEZ, deceased; as surviving parent and legal heir of CAMILA LYNETE LINDNER, a deceased minor; and as Guardian Ad Litem of PAULINA GRANADOS-MARTINEZ, a minor; FERNANDO GRANADOS-MAGALLON, individually and as surviving spouse and legal heir of REFUGIO LETICIA MARTINEZ COSIO, | CASE NO.: 2:10-cv-00051-LDG-VCF |
| | **PLAINTIFF'S OBJECTIONS TO DEFENDANT'S TRIAL EXHIBITS 502, 505, 506, 509(l), 511, 512, 513, 514(o), 515(d-s), 516 and MOTION TO EXCLUDE UNDISCLOSED EXPERT OPINIONS.** |
| Plaintiffs, | |

200329

| | |
|---|---|
| vs. | ) |
| | ) |
| | ) |
| FORD MOTOR COMPANY, a Delaware | ) |
| corporation; BERTHA MEZA d/b/a OROZCO | ) |
| AUTO SALES; EVENFLO COMPANY, INC., a | ) |
| Delaware corporation; BIG LOTS STORES, INC., | ) |
| an Ohio corporation; DOES I through XX, | ) |
| inclusive and ROE BUSINESS ENTITIES I | ) |
| through XX, inclusive, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S OBJECTIONS (AND FORMAL BRIEFING) TO DEFENDANT'S TRIAL EXHIBITS: 502, 505, 506, 509(l), 511, 512, 513, 514(o), 515(d-s), & 516 and MOTION TO EXCLUDE UNDISCLOSED ADDITIONAL EXPERT OPINIONS**

COMES NOW, Plaintiff, by and through his attorney of record, BENSON & BINGHAM, and hereby move this Honorable Court to limit the use of the seat buck and various other demonstrative and illustrative exhibits Defendants intend to have their experts use during the course of the trial proceedings. Not only are these demonstratives and illustratives improperly and untimely disclosed mere days before trial, but assuming that these untimely disclosed exhibits reflect Defendant's experts' intended testimony, it appears that Defendant intends to offer new opinions and new support for opinions from their experts that were never timely disclosed until just before trial. This motion is made and based upon the records and pleadings on file herein, together with the Memorandum of Points and Authorities attached hereto, and such argument of counsel, as may be entertained by this Honorable Court at the time and place scheduled for the hearing of this motion.

DATED this 4th day of October, 2015.

BENSON & BINGHAM

 /s/ Joseph L. Benson II         .
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276

200329

# MEMORANDUM OF POINTS & AUTHORITIES

## I.

## STATEMENT OF FACTS

Plaintiff and Defendant exchanged exhibits on October 1, 2015 in preparation for trial on October 5, 2015.  Defendants disclosed *17* exhibits marked 500-516. Discovery has been closed for *over four years*.  Plaintiff argues that 10 of the *17* exhibits disclosed are objectionable exhibits as they were either: 1.) not timely disclosed, 2.) improper "demonstrative" exhibits, 3.) incomplete exhibits, and/or 4.) a mischaracterization of the actual evidence.  Plaintiff has summarized the list of objections below (in Red.)  In addition, some of these exhibits depict matters that are at variance with or in addition to matters and opinions that were previously disclosed by Defendant's experts and that were disclosed at the time Defendants experts were deposed in this case.  Thus, in addition to excluding illustrative and demonstrative exhibits created for the purpose of bolstering expert opinion testimony as untimely, the Court should exclude any additional opinions and bases for those opinions from Defendant's experts that were not timely disclosed or that vary from the opinions that were disclosed in expert reports and during depositions.

| DEFENDANT'S EXHIBIT # | | PLAINTIFF'S OBJECTIONS: |
|---|---|---|
| 500 | Manual | none |
| 501 | FMVSS Standards | none |
| 502 | Confidential E-mail to Hoffman | IN VIOLATION OF FRCP 26 (b)(4)(c); FOUNDATION |
| 503 | Subject Car Seat | none |
| 504 | Exemplar Car Seat | none |
| 505 | Exemplar BUCK | NOT PREVIOUSLY DISCLOSED; USED FOR POST DISCOVERY SCIENTIFIC  PURPOSES CONTRARY TO CASELAW; INACCURATE MODEL. |

| | | | |
|---|---|---|---|
| 506 | Map | NOT PREVIOUSLY DISCLOSED; USED FOR INADMISSIBLE PURPOSES TO INFER DRIVER COMPARATIVE NEGLIGENCE. |
| 507 | Scale Model | none |
| 508 | Scaled Magnet | none |
| 509(l) | Accident photos | RELEVANCE |
| 510 | Vehicle inspection | none |
| 511 | Photos of Surrogate Testing | LACK OF FOUNDATION; NOT PREVIOUSLY DISCLOSED; PORTRAYAL MISREPRESENTS ACTUAL EVENT. |
| 512 | Photos of Carrier Handle Positions | NOT PREVIOUSLY DISCLOSED; DUPLICATIVE AND UNECESSARY. |
| 513 | Photos of Technical Experiment | LACK OF FOUNDATION; NOT PREVIOUSLY DISCLOSED; TECHNICAL EXPERIMENT IN VIOLATION OF CONTROLLING CASE LAW ON DEMONSTRATIVE EVIDENCE. |
| 514(o) | Photos of Accident Sequence | NOT PREVIOUSLY DISCLOSED; INACCURATE DEPICTION. |
| 515(d-s) | Diagrams of Seating; Forces | NOT PREVIOUSLY DISCLOSED; MISREPESENTS PREVIOUSLY OFFERED EXPERT TESTIMONY. |
| 516 | 1 p. of Autopsy of Elsy | PARTIAL DOCUMENT ONLY; INCOMPLETE EXHIBIT. |

/ / /

/ / /

/ / /

/ / /

/ / /

## II.

## LEGAL ARGUMENTS

Plaintiff understands that certain evidence *is* demonstrative in nature and not objectionable; items **507 (scale model of car)** and **508 (scaled magnet)** fit that bill even though they were not previously screened by Plaintiff. However, the majority of Defendants exhibits were previously not disclosed and are completely new representations of testing items not seen by Plaintiff's experts nor seen by Plaintiff's counsel until October 1, 2015- on the eve of trial.

"Demonstrative evidence" is persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury." *Baugh v. Cuprum S.A. De C.V.*, 730 F.3d 701, 706-707 (7th Cir. 2013) (citing Robert D. Brain & Daniel J. Broderick, The Derivative Relevance of Demonstrative Evidence: Charting Its Proper Evidentiary Status, 25 U.C. DAVIS L. REV. 957, 961 (1992)("Demonstrative proof has only a secondary or derivative function at trial: it serves only to explain or clarify other previously introduced, relevant substantive evidence.")). These pedagogical devices are used to aid the jury in its understanding of the evidence that has already been admitted. "[P]edagogical charts or summaries may include witnesses' conclusions or opinions, or they may reveal inferences drawn in a way that would assist the jury. But ... in the end they are not admitted as evidence." *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004), citing 6 Jack B. Weinstein and Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 1006.04[2] (Joseph M. McLaughlin ed., 2d ed. 2003); *see also Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 257-58 (6th Cir. 1986) (same). Demonstrative exhibits are meant to "clarify, color, or 'organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence.'" *Baugh* (*quoting United States v. Bray*, 139 F.3d 1104, 1111-12 (6th Cir. 1998)).

Understood in light of their purposes, a couple of obvious limitations arise in the use of demonstrative exhibits. Obviously, demonstrative exhibits cannot be used to "demonstrate" matters

that are <u>not</u> otherwise admissible into evidence.  For instance, a demonstrative aid cannot be used to demonstrate a technical theory that was not properly disclosed and admitted into evidence. Likewise, a purportedly "demonstrative exhibit" cannot be used as an excuse to conduct a test or experiment, or introduce expert evidence that was not previously disclosed or for which no legal foundation has been laid.  *See e.g. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 212 F.R.D. 489, 492 (D.S.C. 2001).  More importantly, demonstrative exhibits are not an excuse to avoid disclosing exhibits a party's experts intend to use to illustrate or summarize the experts' opinions until long after the deadlines for expert disclosures and reports.

<u>FIRST ISSUE</u>

<u>Exhibit 505:</u> **"The Seat Buck" Apparatus**



This exhibit is a fabrication of two seats modeled to attempt to re-create the subject Ford vehicle. First, this contraption was not previously disclosed in the course of discovery.  It was never used by any experts in any depositions or referenced to by any expert report.  Plaintiff has no

knowledge as to who made it, what purpose it serves, and why it should be allowed when all parties have real and true pictures of the interior of the actual vehicle.

The law is very clear that, "demonstrative evidence should not be to allowed to express a technical theory."   Id.   Certainly, this set up is to do technical demonstrations without any foundation as to the measurements of the parts, the distances of the seats, the elevations of the seats, or authentication of the parts used.

Plaintiff also argues (even accepting the notion that the device will not be used to do technical portrayals), that it does not adequately appear to represent the distance between the rear passenger seat and front seat.  Further, it also does not present the post accident condition of the front passenger seat (which was deformed.)   Moreover, the seat back angle is portrayed in its most upright position and not reflective of real world use where a "recline" position would be likely used; the back seat is also in set oppositely in a "recline" position.  Further, this is not a real representation of the Ford vehicle floor-board, and thus heights of the seats appear convoluted. This re-creation was certainly not disclosed in a timely fashion, fails to allow Plaintiff to adequately inspect and measure the assembled components, and fails to portray a fair and accurate depiction of the car seat assembly.

Plaintiff anticipates that there will be an attempt to introduce details of Evenflo's technical theory of this case through the use of this "buck" – to demonstrate occupant positions and movements in front of the jury to illustrate Evenflo's experts' opinions about how this incident occurred, the movement of the persons in the vehicle and the infant seat and other technical matters that have always required expert testimony in this case.  This is a common trick attempted in products liability trials – masquerading critical evidence illustrative of complex, technical theories and other expert matters as purely demonstrative to avoid disclosing their use until shortly before

trial.  Not surprisingly, the federal courts have routinely rejected such attempts to ambush opposing parties with undisclosed expert demonstratives and illustratives.

In *Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2005 U.S. Dist. LEXIS 26940, 2005 WL 2989899 (N.D. Ill. Nov. 3, 2005), a case involving an alleged design defect in the Mitsubishi Montero, based on rollover propensity Mitsubishi disclosed videotapes prepared by one of their experts long after the deadline for expert disclosures and reports. 2005 U.S. Dist. LEXIS 26940, 2005 WL 2989899 at *1. Mitsubishi argued that the videotapes were timely disclosed, because they would merely be used as "illustrative exhibits."  *Id.* The court rejected that argument:

> Defendants are mistaken. Demonstrative evidence, which summarizes or supports an expert's opinions must be contained in the expert's report. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir. 1988) (noting that the category of "exhibits to be used as a summary of or support for the [expert's] opinions" "encompasses demonstrative evidence which summarizes or supports the expert's opinion."). Rule 26(a)'s disclosure requirements contain no exception for demonstrative evidence which summarizes or supports an expert's opinion.

*Lekkas*, 2005 U.S. Dist. LEXIS 26940, 2005 WL 2989899 at *1.  Similarly, in *Estate of Thompson v. Kawasaki Heavy Indus.*, 291 F.R.D. 297, 314 (N.D. Iowa 2013), the court refused to allow Kawasaki to use "demonstrative evidence" that was not timely disclosed in its experts' reports. *See also Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1089 n.6 (10th Cir. 1994) (noting that the amendment of Rule 26 that took effect December 1, 1993, required that "all parties and the court should possess full information well in advance of trial on any proposed expert testimony or demonstrative evidence," citing then Rule 26(a)(2)(B), which included the requirement that the expert report contain "any exhibits to be used as a summary of or support for the opinions").

In short, if Evenflo intends to use the buck during trial to illustrate, summarize or support their experts' technical opinions, or to perform some sort of surrogate testing, experimentation or demonstration during trial, Evenflo is extremely untimely in disclosing its experts' intent to rely on the buck or how they plan to use it at trial.  Such non-disclosure is definitely unduly prejudicial.

Had Plaintiff been informed that Van Arsdell intended to use a buck to demonstrate his theory of this case for the jury, Plaintiff would have been afforded an opportunity well in advance of trial to examine the exhibit, take measurements to ensure how closely it resembles the incident vehicle, and asked the experts' questions on how they plan to use the buck, and what expert work they have reviewed as the basis for how they plan to use the buck.  Plaintiff would have had time to prepare cross-examination strategies and prepare and disclose rebuttal opinions from their experts related to the intended use of the buck by Evenflo's experts.

In *Lekkas*, the court found that there was no undue prejudice because the parties still had three months before trial to finish the discovery after learning of the undisclosed expert exhibits. However, here – as in *Thompson* – the defendant has waited until mere days before trial, giving Plaintiff no opportunity to properly conduct discovery regarding the buck, or Evenflo's experts' intended reliance on it as demonstrative or illustrative support for their opinions.  The buck should be excluded from trial entirely, or at the very least, no Evenflo expert should be allowed to testify about or use it to demonstrate or illustrate their opinions to the jury.

## SECOND ISSUE

**EXHIBIT 513:  PHOTOGRAPHS OF POST DISCOVERY UNPERMITTED TESTING-NOT DISCLOSED.**



Defendant's Trial Exhibit 513-B



Defendant's Trial Exhibit 513-C





Again, this purportedly "demonstrative exhibit" cannot be used as an excuse to conduct a test or experiment, or introduce expert evidence that was not previously disclosed or for which no legal foundation has been laid.  *See e.g. Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 212 F.R.D. 489, 492 (D.S.C. 2001).  This is a rigged test that does not depict the circumstances of the accident.  First, it appears loaded such that the seat so that it weighs 61.2 lbs.  Camila, the occupant weighed a mere 15 lbs. And, at best, the carrier probably weighs 5 lbs.   Plaintiff has not seen or inspected this "Health-o-Meter" scale.  Who calibrated it?  Where is the foundation relating to this overly simplified and highly misleading parlor trick? The actual rollover event was much more dynamic than this trick can possibly recreate.

Moreover, this "experiment" is a misrepresentation of the true accident condition: It is anchored at two points so that it is resisting the pull of the carrier's weight in both the front and back

of the base.  This resistance increases the pressure it takes to actuate the release lever.  This is a flawed experiment, and truly misrepresents the reality of the actual evidence. We know the base was only tethered to the vehicle by the seat belt and therefore would have pivoted upward with the movement of the carrier as it goes towards the roof of the vehicle--At least with respect to the part of the carrier that is pivoting (where the babies head is located and the release lever too), there would not be as much force as depicted in this experiment.    While there are clear errors with the experiment itself, post discovery testing should certainly not be allowed.  Plaintiff experts have had not opportunity to refute this homemade contraption or understand exactly what it proves.

Related to this exhibit, it appears that Defendant now intends to offer new and additional opinions about how much energy was loaded into the car seat during this rollover.  No such opinions were ever disclosed.  Indeed, when Plaintiff's counsel deposed Defendant's experts, they testified that they specifically *did not know* the information that is now apparently reflected in this exhibit.  Thus, in addition to excluding the use of the untimely disclosed exhibit, the Court should also exclude any testimonial evidence from Defendant's experts regarding the amounts or directions of loading forces on the car seat during the rollover.

### THIRD ISSUE

**Exhibit 511: RE-CREATION SCENES PHOTOS (g)-(p)**



1
2
3
4
5
6
7
8
9
10
11



12
13    Plaintiff argues these scenes are not a reproduction of the actual event and again are nothing

14 more than fiction used to mislead the jury. They do not account for the car seat pivoting from the

15 seatbelt or the mother coming off her seat as she moves towards the driver side at the roll initiation.

16 In his deposition, Defendant's Expert, Dr. Banks testified the surrogate photos were done to

17 take geometric measurements, but not to recreate how the car seat or mother actually moved.  These

18 photos clearly were created post discovery to conform new evidence and opinions that are not part

19 of the record, and of course, were not previously disclosed.

20    As with the exhibit discussed previously, this untimely disclosed exhibit *also* shows

21 opinions that were not properly disclosed from Defendant's experts.   Specifically, the exhibit

22 depicts the surrogate for Elsy still seated in the middle, rear seat at the time she supposedly moves

23 laterally into the car seat.  However, when Defendant's occupant kinematics/biomechanics expert

24 was deposed, he testified that he had not determined where Elsy's body would have been during the

25 roll sequence.  Nor is any such information disclosed as a basis for his opinion in his report.  Had

26 this opinion been timely disclosed, it would have been subject to exclusion under *Daubert* as

27
28

facially unreliable and contrary to the basic laws of physics, as well. The point at which Defendant claims Elsy's body contacted the car seat is when the vehicle initially touched down after a driver's side leading slide resulted in a high speed "trip" into a counter-clockwise rollover.  That initial touch down was at least a ¾ roll, after an initial tripping impact to the left (driver's side) of the vehicle.  To place Elsy, who Defendant claims was unrestrained by a seatbelt, as still in a fully seated position when she supposedly impacts the car seat directly contradicts the basic laws of physics, which would have carried Elsy to the left at the time of "trip," and upwards toward the ceiling of the vehicle as the driver's side floor rotated away from her during the roll.

## FOURTH ISSUE

**EXHIBIT 512: POST DISCOVERY PHOTOGRAPHS OF CAR SEAT**. Plaintiff Argues these depicted "demonstrative evidence" can be depicted in person and are <u>duplicative and unnecessary</u>.

## FIFTH ISSUE

**EXHIBIT 502**:   **ATTORNEY EMAIL TO EXPERT HOFFMAN**

The Court should dismiss email to Hoffman re cause of carrier-base separation.  This is my supposition re the cause of the failure based on preliminary discussions with other experts including Stevens who inspected and measured an exemplar seat. Under rule, it would not be discoverable.   It is also hearsay.

## SIXTH ISSUE

**EXHIBIT 516: (PARTIAL DOCUMENT ONLY) NOT A COMPLETE EXHIBIT of <u>AUTOPSY</u> REPORT.**

Plaintiff argues that Defendant has selectively only produced a partial document of the Elsy Lindner's Autopsy Report.  First, under optional completeness the whole autopsy, photos and all need to be included.  Further, Defendants only include the Spanish version final page of the report without the benefit of all the photos, which precludes jury from seeing full autopsy.     Plaintiff respectfully requests the full report be shown to the jury as depicted in Plaintiff's Exhibits.

## SEVENTH ISSUE

**EXHIBIT 509(I): PHOTOGRAPH OF DECEASED NON-PARTY AT SCENE.**

Plaintiff argues this is an irrelevant picture that has nothing to do with the subject car seat and base.

## EIGHTH ISSUE

**EXHIBIT 514 (O):  UNDISCLOSED DEMONSTRATIVE AID MISREPRESENTS TRUE CONDITION OF SCENE.**

Exhibit "O" attempts to use a demonstrative aid to depict the forces acting on Elsy without accounting for the topography.  This vehicle rolled down an embankment not across a plane as depicted.  It is also untimely disclosed as a technical illustrative or demonstrative for expert use and is inadmissible as such.  *See e.g. Lekkas*, *Thompson*, supra.

## NINTH ISSUE

**EXHIBIT 515 (d-s):   UNDISCLOSED DIAGRAMS DEPICTING NEW SCIENTIFIC ARGUMENTS.**





These do not fairly and accurately represent the accident dynamics as described by Defendant's Expert Dr. Banks in his deposition. There is no pivoting or lateral movement of the car seat in response to the vehicle rolling towards the driver's side and then going upside down. It depicts Elsy as being tethered even though Defense claims she was unbelted. Defendant's experts Van Arsdell and Banks both agreed Elsy would have moved forward, left, and up off her seat to some degree before ever moving back in the direction of the car seat. This puts Elsy out of her seating position and into the driver's side. None of these depictions account for what Defendant's experts originally stated what happened to her; this changes the story at the last minute through these "demonstrative illustrations."

The purpose of expert reports and disclosures is to be highly "detailed and complete" and specifically includes the duty to disclose "all exhibits to be used as a summary of or support for the opinions , . ." which "encompasses demonstrative evidence which summarizes or supports the

expert's opinions." *Salgado by Salgado v. GMC*, 150 F.3d 735, 741 (7th Cir. 1998)  (*citing* Robert Matthew Lovein, A Practitioner's Guide: Federal Rule of Civil Procedure 26(a)—Automatic Disclosure, 47 SYRACUSE L. REV. 225, 257-58 (1996)).   Given the importance of such technical information to the issues presented and the very high likelihood of unfair prejudice by rewarding ambush discovery tactics " Rule 26 enhances the district court's role as 'gatekeeper,' for it permits 'an early and full evaluation' of evidentiary problems in a case and allows the court to 'make an early pretrial evaluation of issues of admissibility' carefully and meticulously." *Id.* (*quoting Robinson* supra.).

      This is precisely the sort of ambush strategy Defendant intends to employ in this case. Using previously undisclosed demonstrative and illustrative exhibits like this one, or Exhibits 505 and 513 discussed above, Defendants intend to introduce undisclosed expert opinions and scientific and technical bases for those opinions by pretending they are nothing more the demonstrative aids and producing them less than a week before trial begins.  The Court has a legal obligation to bar the gate to such a strategy.  The time to determine the technical and expert bases for Defendant's theories in this case has long since passed.  There is no question that disclosing these theories five days before trial, years after the close of discovery and with no fair opportunity to evaluate and counter these theories in highly and unfairly prejudicial.

**TENTH OBJECTION**

**EXHBIT 506:          MAP EXHIBIT**

*/ / /*

*/ / /*

*/ / /*



The purpose of the Map is to end-around the Court's ruling on limiting comparative negligence. The Map was not timely disclosed and seeks to interject a visual image of the distance as to imply the driver's exhaustion. The Court has already ruled that only the speeds of the rollover are relevant, but not the driver's proximate cause as it relates to the car seat mal-function.

**III.**

**CONCLUSION**

Based on the foregoing, Plaintiff requests the Court Sustain his Objections regarding the named exhibits in the trial proceedings.

DATED this 4th day of October, 2015.

BENSON & BINGHAM

 /s/ Joseph L. Benson II        .
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276

Attorneys for Plaintiffs

18

<u>**CERTIFCATE OF SERVICE**</u>

I hereby certify that service of the foregoing **PLAINTIFF'S OBJECTIONS AND MOTIONS TO STRIKE DEFENDANT'S EXHIBITS** was made this date by electronic service to the following:

Rosemary Missisian, Esq.                          Charles L. Clay, Jr., Esq.
WEINBERG, WHEELER, HUDGINS,                        CHUCK CLAY & ASSOCIATES
    GUNN AND DIAL, LLC                             225 Peachtree Street, N.E., Suite 1700
6385 S. Rainbow Blvd., Suite 400                   Atlanta, GA 30303
Las Vegas, NV 89118                                Attorney for Defendant,
Attorney for Defendant,                            Evenflo Company, Inc.
Evenflo Company, Inc.

Dan H. Ball, Esq.                                  Larry W. Lawrence, Jr., Esq.
Richard P. Cassetta, Esq.                          LAWRENCE LAW FIRM
BRYAN CAVE                                         3112 Windsor Road, Suite A-234
211 N. Broadway, Suite 3600                        Austin, TX 78703
St. Louis, MO 63102                                Attorney for Plaintiffs
Attorney for Defendant,
Evenflo Company, Inc.

Ricardo A. Garcia, Esq.
Jody R. Mask, Esq.
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
Attorney for Plaintiffs

DATED this 4th day of October, 2015.


                    /s/ Amy L. Sulanke         .
                    An employee of BENSON & BINGHAM