Rosemary Missisian, Esq.
Nevada Bar No. 8877
WEINBERG, WHEELER, HUDGINS,
    GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:     (702) 938-3838
Facsimile:      (702) 938-3864
rmissisian@wwhgd.com

Charles Lloyd Clay, Jr., Esq.
*Admitted Pro Hac Vice*
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA  30303
Telephone:     (404) 949-8118
chuck@chuckclay.com

Dan H. Ball, Esq.
*Admitted Pro Hac Vice*
Richard P. Cassetta, Esq.
*Admitted Pro Hac Vice*
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:     314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com
*Attorneys for Defendant*
*EVENFLO COMPANY, INC.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW R. LINDNER, et al., | Case No. :     2-10-CV-0051-LDG-LRL |
| Plaintiffs, | |
| vs. | **DEFENDANT EVENFLO COMPANY, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO EXHIBITS AND MOTION TO EXCLUDE UNDISCLOSED EXPERT OPINIONS** |
| FORD MOTOR COMPANY,  et al., | |
| Defendants. | |

WEINBERG WHEELER HUDGINS GUNN & DIAL

In connection with its objection to certain demonstrative exhibits and other exhibits listed on Evenflo's Final Trial Exhibit List filed on September 30, 2015 [Dkt. Entry No. 154], Plaintiff incorrectly characterizes the exhibits as an attempt by Evenflo to offer undisclosed expert opinions and has filed a motion to exclude use of the exhibits by Evenflo at trial. For the reasons set forth below, Plaintiff's motion must be denied. The motion also is premature in multiple respects.

## A. Evenflo Exhibit 505 ("The Seat Buck")

Evenflo listed on its exhibit list an exemplar "seat buck," which it intends to use for demonstrative purposes with the jury. The buck has actual 1998 Ford Explorer seats and seat belt configurations, and actual floor carpeting from a 1998 Explorer. The buck was constructed by one of Evenflo's expert witnesses, William Van Arsdell, who has a Ph.D. in engineering from the Massachusetts Institute of Technology, to represent the geometry of the front and back seats of an actual 1998 Ford Explorer. These types of bucks are used frequently for demonstrative purposes in product liability cases involving automotive accidents. Contrary to Plaintiff's assertions, the purpose of the buck is not to advance any new expert opinions, but rather to help illustrate for the jury the issues in the case regarding Evenflo's previously disclosed opinions and the opinions of Plaintiff's experts. The buck can be used in connection with testimony about whether and how the child seat interacted with the front seat back and how other occupants seated in the second row of the Explorer interacted with the child seat.

Both sides in the case have inspected Ford Explorers and photographed them extensively. The geometry of the seats and seatbacks and seat belts isn't a surprise to anyone. It is not practical to use a full Ford Explorer for demonstrative purposes. In fact, Plaintiff, who possesses the accident vehicle, has declined to bring it to trial. The buck is an excellent substitute to help explain evidence to the jury.

Plaintiff also incorrectly claims that Evenflo waited until the eve of trial to disclose that they intended to use a buck.  On its preliminary exhibit list served to Plaintiffs on June 12, 2015, Evenflo disclosed that it intended to use at trial an exemplar vehicle seat and seat belt configuration.  *See* Evenflo's Exhibit List Served June 12, 2015, Exhibit No. 35, attached hereto as Exhibit 1.  Although Evenflo put Plaintiff on notice four months ago that it intended to use an exemplar Ford Explorer seat and seat belt configuration at trial, Plaintiff never raised an objection to it until yesterday.  When Plaintiff requested an opportunity to view the buck last week, they were promptly given access to inspect it and photograph it.

To be clear, Evenflo is not seeking to have the seat buck  admitted into evidence.  In other words, it is not seeking to have the buck available to the jury during jury deliberations.  Rather, Evenflo seeks to use the buck for demonstrative purposes.  Courts have recognized the distinction between demonstrative exhibits and exhibits that a party seeks to introduce into evidence.  For example, in *Baugh v. Cuprum*, 730 F.3d 701, 707 (2013), the first case cited by Plaintiff,  the exhibit at issue was a ladder.  The Seventh Circuit held:  "The Court and counsel understood this ruling to mean that the exemplar ladder was not actually admitted into evidence and would not be available to the jury during deliberations.  That was the basis of the court's pretrial decision to overrule  plaintiff's objection to all use of the exemplar ladder.  The term "demonstrative" thus was used to refer to an object or document that could be displayed to the jurors to help them understand the substantive evidence (testimony or other objects or documents) by interpreting, summarizing, or explaining it, but that would not be available during jury deliberations."  *Id.*   The Seventh Circuit went on to explain, "When the term is applied correctly, it allows parties and the court to avoid protracted disputes regarding the admissibility of demonstrative exhibits that might arise if such an exhibit is being offered as substantive evidence."  *Id.*  The Seventh Circuit reversed the

trial court's decision in *Baugh* because the Court allowed the ladder to go to the jury room during deliberations after it had been treated at trial as a demonstrative exhibit.  *Id.* at 710.  In this case, Evenflo is not seeking to have the seat buck to go to the jury room during deliberations—it is only seeking to use it for illustrative purposes during the trial.

In *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426 (9th Cir. 1991), the Ninth Circuit affirmed the trial court's decision to allow certain X-rays of an unidentified patient to be used for demonstrative purposes by defendant's expert to illustrate what pleural plaques look like.  The Ninth Circuit held, "The x-rays did not introduce new evidence; they were simply a more graphic version of what Dr. Moscow had said already."  Id. at 1432-33.

As discussed above, the seat buck was constructed by one of Evenflo's engineering experts to represent, in all aspects relevant to the issues in this case, the actual vehicle geometry of a 1998 Ford Explorer seating configuration.  Actual Ford Explorer seats and seat belts were used.  Dr. Van Arsdell will lay a foundation at trial, that the seat buck is a valid representation of a 1998 Ford Explorer.  The distance between the seats is based on measurements from an actual Explorer.  The front seat can be moved fore and aft, and its seat back can be reclined, just as an actual Explorer.  The seats operate as intended.     In an unpublished opinion, the Ninth Circuit affirmed the trial court's decision to allow a demonstrative model of part of an M-16 rifle.  Taylor  objected to the use of the model because it was several times larger than an actual M-16.  The Ninth Circuit held "[t]he probative value of a model designed to elucidate technical aspects of the government's case is clear, while on the record before us, its  prejudicial effect seems elusive and not 'needless[ly] …cumulative.'  See Fed.R.Evid. 403.  The admission of the model was not an abuse of discretion."  United States of America v. Taylor, 127 F.3d 1108 (9th Cir. 1997).

Plaintiffs also argue that the seat back angle is portrayed in its most upright position and not reflective of the real world were "recline" position would likely be used.  The front seat in the seat buck can recline, because it is an actual 1998 Ford Explorer seat.  The second row seat has two positions, (upright and down), because it is an actual 1998 Ford Explorer seat.

In conclusion, Evenflo should be permitted to use the seat buck for demonstrative purposes at trial.  It is representative of an actual 1998 Ford Explorer seating configuration and there is no unfair prejudice from its use as demonstrative evidence.

B. **Photographs of Force Demonstration (Exhibit 513)**

Plaintiffs have inaccurately argued in this case that only a few pounds of force would be required to actuate the release lever during this high speed rollover accident.  In his deposition, Evenflo's expert Dr. Van Arsdell, testified that in a rollover sequence, many more pounds of force would be required.  *See, e.g.,*  Van Arsdell deposition at 67-72, Exhibit 2.  Plaintiff has never done any evaluation regarding the force necessary to detach the carrier by use of the release lever in this accident.  Evenflo does not believe that testimony about a low level force being capable of releasing the handle will be admissible at trial because it will not be supported by adequate foundation.  However, if it is admissible, Dr. Van Arsdell will explain why this is erroneous.  The photographs listed in Exhibit 513 are demonstrative of his opinion that it takes much more than a few pounds of force to detach the carrier during  rollover by use of the release lever.

Plaintiff's objection is premature.  Depending upon developments at trial, this evidence may not be necessary.  If and when Evenflo offers the evidence, it will do so only after laying a proper foundation.

Although premature, Evenflo will address briefly Plaintiff's foundational objections.  First, Plaintiff argues  that the testing is inaccurate because Camila weighed approximately 15 lbs. and the carrier weighed 5 lbs., and Evenflo used a total of 61.2 lbs. for the demonstration.   The demonstration was intended to represent  forces on the carrier during a rollover.  Camila weighed 15 lbs. and the carrier of the Embrace weighs approximately 7 lbs. (22 lbs. total).  Multiplying 22 lbs. by 2.75 G's equals 61.2 lbs.  That is representative of the types of forces placed on the carrier-base attachment during a rollover.   Plaintiff's experts have opined there were 4 G's of force in the rollover.  Dr. Van Arsdell's demonstration shows that with only 2.75 Gs, less than opined by Plaintiff, the carrier cannot be detached by the release lever.  The forces in a rollover greatly increase the friction of the carrier to base attachment points to levels much greater than the static situation claimed by Plaintiff's counsel.  This is what Dr. Van Arsdell testified to at his deposition (see, e.g., 67-72) and this demonstration illustrates that testimony.

Plaintiffs also raise objections as to whether the force gauge used by Dr. Van Arsdell were properly calibrated.   They were properly calibrated and Dr. Van Arsdell can lay the proper foundation at trial.

Finally, Plaintiffs argue that the force testing is inaccurate and misleading because two ends of the car seat were restrained, whereas the Embrace installed in the Linder vehicle would only have been restrained on one end (at the seat).  What Plaintiffs fail to acknowledge, however, is that their car seat expert, Arthur Hoffman, has opined that the car seat interacted with the front seat back.  Under this theory the seat was restrained at both ends during the rollover.  Again, consistent with the cases discussed above, these photographs are demonstrative exhibits to illustrate Dr. Van Arsdell's testimony that Plaintiff's theory is inaccurate.

**C.  Photos of Surrogate Testing  (Exhibit 511)**

Plaintiffs object to Exhibit 511, which are photos of surrogate testing performed by Plaintiff's biomechanics expert Dr. Robert Banks because the photos supposedly are not accurate. Plaintiffs also object to the photos as allegedly "untimely."  First, it should be noted that these photos were previously produced to Plaintiffs back in 2011.  Second, this motion is premature. Objections of this nature cannot be appropriately addressed until the time of trial when the witness is present to testify about the proposed exhibits.  Dr. Banks will lay a foundation that the photos demonstrate the movements of the occupants during the rollover event at issue in this case. Evenflo does  not intend to use the photos at trial until Dr. Banks has laid a foundation for their use.  The issue of the admissibility of these photos is best dealt with a trial in connection with Dr. Banks' testimony.

**D.  Photographs of the Subject Car Seat and Exemplar Car Seat**

Plaintiff's car seat expert, Arthur Hoffman, although his testimony is confusing, apparently believes the position of the carry handle of the Embrace at the time of the accident was in the "stand" position, rather than the middle position.  Exhibit 512 contains  scene photographs of the subject car seat, which clearly show the position of the carry handle being in the middle position, and comparison photos of an exemplar Embrace car seat with the handle in that middle position. These photographs are not "duplicative and unnecessary."   They will illustrate for the jury the position of the carry handle.  Dr. Van Arsdell can lay the proper foundation for the admissibility of these photos at trial.

### E.  Attorney Email To Expert Hoffman (Evenflo Exhibit 502)

Evenflo exhibit 502 is an e-mail from Plaintiff's counsel Larry Lawrence to Plaintiff's car seat expert, Arthur Hoffman, dated March 7, 2011, in which Mr. Lawrence remarkably told Mr. Hoffman what his theory should be in the case.  This e-mail was voluntarily produced by Plaintiffs in the litigation, and was used by counsel for Evenflo at the deposition of Mr. Hoffman in April 2011, Plaintiff raised no objections or at any time in the ensuing four years.

The parties filed their motions *in limine* in June of this year, Plaintiffs' motion *in limine* No. 26 sought to preclude use of "Expert & Attorney Work Product and Communications."  In response to Plaintiff's motion, Evenflo specifically addressed the e-mail from Mr. Lawrence to Mr. Hoffman, which had been listed by Evenflo on its June 12, 2015 exhibit list.  Although this issue was fully briefed and ripe for a determination by the Court at the motion *in limine* hearing, Plaintiffs withdrew their motion *in limine* on the day of the hearing.

After the withdrawal of their motion *in limine*, Plaintiff never subsequently objected to the use of the e-mail until they filed their objections to Evenflo's exhibits yesterday.  This issue has been fully briefed in connection with Plaintiff's Motion in Limine No. 26.

### F.  Autopsy **Report (Evenflo Exhibit 516)**

Plaintiff objects to the fact that Evenflo listed the Autopsy report of Elsy Lindner, but did not include the photos.  The photos are graphic and would be unfairly prejudicial if introduced into evidence.  Each side's expert has testified about the injuries sustained by Elsy and the location of those injuries.  If a particular photo is needed to establish a point in dispute, the parties can take that up with the Court during the trial.  Otherwise the autopsy photos should not be introduced into evidence.

### G.  Scene Photograph 509(I)

Evenflo Exhibit 509(I) is a scene photo of the Explorer.  Plaintiff objects to the exhibit because it also includes the photo of a non-party decedent.  Evenflo will agree to crop out the photo of the decedent.

### H.         Demonstrative Illustration of Forces Acting on Vehicle and Occupants (Evenflo Exhibit 514(0) and 515(d-s)

Plaintiff objects to Evenflo Demonstrative Exhibit 514(0) and 515 (d thru s) on the basis that they  allegedly does not accurately depict the forces on the vehicle or occupants during the rollover.  This objection is premature.  Plaintiff misinterprets the purpose of these demonstrative exhibit.  Evenflo agrees not to show any of these exhibits  to the jury until a proper foundation is laid by one of its experts.  Any objection can be addressed by the Court at that time.

### I.  Map of Route (Evenflo Exhibit 506)

Plaintiff objects to Evenflo Demonstrative Exhibit 506, a route map from Las Vegas to the place of the accident.  The purpose of the map is to depict for the jury the route leading up to the time of the accident.   Defendant does not intend to disobey the Court's order regarding comparative fault.

1

2　DATED this 5th Day of October, 2015.

3

4

5　　　　　　　　　　　　　　　　　　　　/s/ *Rosemary Missisian*
　　　　　　　　　　　　　　　　　　　　Rosemary Missisian, Esq.
6　　　　　　　　　　　　　　　　　　　　WEINBERG, WHEELER, HUDGINS,
　　　　　　　　　　　　　　　　　　　　　　GUNN AND DIAL, LLC
7　　　　　　　　　　　　　　　　　　　　6385 S. Rainbow Blvd., Suite 400
　　　　　　　　　　　　　　　　　　　　Las Vegas, NV  89118
8　　　　　　　　　　　　　　　　　　　　Telephone:　　(702) 938-3838
　　　　　　　　　　　　　　　　　　　　Facsimile:　　(702) 938-3864
9　　　　　　　　　　　　　　　　　　　　rmissisian@wwhgd.com

10　　　　　　　　　　　　　　　　　　　Charles Lloyd Clay, Jr., Esq.
11　　　　　　　　　　　　　　　　　　　Chuck Clay & Associates
　　　　　　　　　　　　　　　　　　　　225 Peachtree Street, N.E., Suite 1700
12　　　　　　　　　　　　　　　　　　　Atlanta, GA  30303
　　　　　　　　　　　　　　　　　　　　Telephone:　　(404) 949-8118
13　　　　　　　　　　　　　　　　　　　chuck@chuckclay.com

14　　　　　　　　　　　　　　　　　　　Dan H. Ball, Esq.
　　　　　　　　　　　　　　　　　　　　Richard P. Cassetta, Esq.
15　　　　　　　　　　　　　　　　　　　Bryan Cave
　　　　　　　　　　　　　　　　　　　　211 North Broadway, Suite 3600
16　　　　　　　　　　　　　　　　　　　St. Louis, MO  63102
　　　　　　　　　　　　　　　　　　　　Telephone:　　314 259-2823
17　　　　　　　　　　　　　　　　　　　Richard.cassetta@bryancave.com
　　　　　　　　　　　　　　　　　　　　dhball@bryancave.com
18
　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
19　　　　　　　　　　　　　　　　　　　*EVENFLO COMPANY, INC.*

20

21

22

23

24

25

26

27

WEINBERG WHEELER
HUDGINS GUNN & DIAL

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2015, a true and correct copy of the foregoing **DEFENDANT EVENFLO'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO EXHIBITS AND MOTION TO EXCLUDE UNDISCLOSED EXPERT OPINIONS** was served by operation of the Court's electronic filing system on the following counsel of record:

| | |
|---|---|
| Joseph L. Benson II, Esq.<br>BENSON & BINGHAM<br>11441 Allerton Park Drive, Suite 100<br>Las Vegas, NV  89135<br>joe@bensonbingham.com<br>*Attorneys for Plaintiffs* | Larry W. Lawrence, Jr., Esq.<br>Lawrence Law Firm<br>3112 Windsor Road, Suite A-234<br>Austin, TX  78703<br>lawrencefirm@aol.com<br>*Attorneys for Plaintiffs* |
| Ricardo A. Garcia, Esq.<br>Jody R. Mask, Esq.<br>Garcia Ochoa & Mask, LLP<br>820 S. Main St.<br>McAllen, TX  78501<br>ric@gomlaw.com<br>jody@gomlaw.com<br>*Attorneys for Plaintiffs* | |

*/s/ Rosemary Missian*
Rosemary Missian
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC