Dan H. Ball, Esq.
*Admitted Pro Hac Vice*
Richard P. Cassetta, Esq.
*Admitted Pro Hac Vice*
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:      314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com
*Attorneys for Defendant*
EVENFLO COMPANY, INC.

Rosemary Missisian, Esq.
Nevada Bar No. 8877
WEINBERG, WHEELER, HUDGINS,
    GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:     (702) 938-3838
Facsimile:      (702) 938-3864
rmissisian@wwhgd.com

Charles Lloyd Clay, Jr., Esq.
*Admitted Pro Hac Vice*
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA  30303
Telephone:     (404) 949-8118
chuck@chuckclay.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW R. LINDNER, et al., | Case No. :      2-10-CV-0051-LDG-LRL |
| Plaintiffs, | |
| vs. | **DEFENDANT EVENFLO COMPANY, INC.'S  MOTION TO PROHIBIT REFERENCE TO NEW DESIGN DEFECT THEORY__** |
| FORD MOTOR COMPANY,  et al., | |
| Defendants. | |

A. **INTRODUCTION**

Throughout the expert discovery process and pre-trial, the fundamental dispute between Plaintiff and Evenflo about what caused the detachment of the carrier of the Embrace car seat from its base has been whether it was an inadvertent actuation of the red release lever (Plaintiff's theory), or whether the carrier was forced off the base by extreme and unforeseeable forces resulting from this violent rollover event and an unbelted adult crushing the car seat against door without any contact of the red release lever by the mother's body or any other object. Put another way, Plaintiff's design defect theory has been that the red release lever was susceptible to inadvertently releasing the carrier from the base as a result of contact (with the front seat back, according to Plaintiff's expert Arthur Hoffman, or other objects in the vehicle, according to Plaintiff's expert John Smith). Indeed, as recently as two weeks ago when Plaintiff filed his trial brief for this trial, Plaintiff reaffirmed his design defect theory:

> "Plaintiff contends the carrier's unprotected large red release lever was depressed by contact with something within the vehicle during the rollover, which caused the carrier to detach from the base….Plaintiff's experts, which include an infant car-seat designer, an accident re-constructionist and a biodynamics engineer, collectively opine that the release lever was actuated during the accident which caused the carrier's separation and Camila's death".

Plaintiff's Trial Brief filed 9/22/15 [Document No. 155] at 4. Now, on the day jury selection has begun, apparently realizing the theory of the case they have clung to throughout discovery and pre-trial is fatally flawed, Plaintiff apparently seeks to supplement the inadvertent release theory and adopt a theory that Plaintiff has never disclosed before, namely that the alleged defect in the Embrace is a propensity to be forced off its base by unbelted occupants. This design defect theory has never before been disclosed by Plaintiff, and, indeed, its experts have affirmatively rejected it. Allowing Plaintiff's experts or counsel to testify about this previously undisclosed expert opinion

at trial would be unfairly prejudicial to Evenflo, contrary to the Federal Rules of Civil Procedure, and contrary to controlling case law.

It has been suggested the opinion of the U.S. Court of Appeals for the Ninth Circuit reversing the grant of summary judgment in this case somehow addressed Plaintiff's newly minted theory of why the car seat is defective. It did not—the Ninth Circuit opinion unambiguously held that there was a triable issue of fact based upon Plaintiff's theory related to the alleged <u>inadvertent actuation of the release lever by contact with some object</u>: "The district court's order does not impugn Dr. Hoffman's opinion that the car seat was defective because its release handle was prone to accidental release. If this defective release handle was activated by objects in the car during the rollover and caused Camila's injuries, as Lindner's other experts opined, that would be sufficient to create a triable issue of fact in this case, since the consumer expectation test is part of Nevada products liability law." *Lindner v. Ford Motor Company et al.*, 585 Fed.Appx. 525, 526 (9th Cir. 2014) [Document No. 84]. The Ninth Circuit opinion did not address the new and previously undisclosed theory that Plaintiff seeks to advance, or alter in any way the requirement of the Federal Rules and controlling case law that this new and previously undisclosed opinion be excluded. During a post-decision conference with the trial court, the parties were asked whether additional discovery was necessary, and Plaintiff stated none was necessary. Because Plaintiff's new design defect theory was never disclosed in discovery, it must be excluded. Indeed, that theory is not referenced at all in the Ninth Circuit opinion.

### B. PLAINTIFF'S NEW DESIGN DEFECT THEORY HAS NEVER PREVIOUSLY BEEN DISCLOSED AND, IN FACT, HAS BEEN CONSISTENTLY REJECTED BY PLAINTIFF'S EXPERTS

Not only have Plaintiff's experts never disclosed an opinion that the alleged design defect was the propensity of the carrier to be too easily forced off its base by an unbelted passenger, but they have affirmatively rejected this theory. Plaintiff has never disclosed this new design defect

theory in: 1) in an interrogatory answer; 2) in an expert report; 3) in an expert deposition; or 4) in Plaintiff's trial brief.

Evenflo specifically asked Plaintiff in written discovery to describe all defects it contends were present in the car seat. Plaintiff objected, and stated: "For specific defects, Plaintiff will disclose all retained experts, with their respective reports, in compliance with the Nevada Rules of Civil Procedure and the governing Discovery Scheduling Order." Plaintiff's Supplemental Responses to Interrogatory No. 6, attached hereto as Exhibit 1. Plaintiff did serve expert reports, but as the Court will see, none of the experts ever disclosed the new theory Plaintiff now seeks to advance. See Expert Reports of Hoffman, Smith, and Stevens, attached as Exhibit 2.

None of Plaintiff's experts disclosed this new opinion during their expert depositions either. For example, Plaintiff's expert John Smith consistently testified at his deposition that his opinion is that the detachment of the carrier from the base was caused by an inadvertent actuation of the red release lever by some object:

```
     Q.   Do you have an opinion to a reasonable degree of
19   engineering certainty as to what precisely caused the
20   detachment of the carrier from the base?
21   A.   Well, the evidence indicates that the handle was
22   pushed releasing it and that's what caused it to come un- --
23   separated from the base.
24   Q.   What pushed the handle, in your opinion?
25   A.   There's no way to know at this point….
```

*****

```
     Q.   Okay.  I'm trying to get a handle as to whether
18   you're going to come to trial and testify before a jury that
19   the carrier detached from the base due to X, some specific
20   mechanism that caused the carrier to detach from the base.
21       A.   Not a -- not a precise mechanism, but there was --
22   would -- was a force applied to the handle that caused the --
23   it to become separated from the base, the carrier to come --
24   become separated from the base.

25       Q.   And you're not sure what applied that force?
```

```
                                  17
 1   A.   There's no way to know.  There's too many
 2   variables.
```

Deposition of John Smith at 14:18-25; 16:18-17:1, attached hereto as Exhibit 3 (emphasis added). At his deposition, Plaintiff's car seat expert Arthur Hoffman opined clearly that his sole opinion was that the separation was caused by an inadvertent actuation of the red release lever due to contact with the front seat back:

```
 3        I think the -- the final opinion, when you consider
 4   all of the evidence, is that there was an inadvertent
 5   separation of the carrier from the base, an
 6   unintentional happening.  I believe the reason for
 7   that was the close proximity of the -- the infant
 8   seat, the Embrace infant seat, to the -- and the
 9   release handle of that seat being exposed to the
10    passenger front seat.  I believe there was an impact
11    of the child infant seat handle and the -- the
12    passenger front seat, which was also deformed and
13    slightly reclined, and the handle was exposed, and
14    that is what caused the inadvertent separation.
```

Hoffman Deposition at 13:25-14:14, attached hereto as Exhibit 4 (emphasis added).

Nowhere in their depositions do Smith or Hoffman opine that the alleged defect in the Embrace is a propensity of the carrier to get forced off the base by an unbelted passenger. In fact, they specifically rejected this theory. For example, Smith testified:

```
 7   Q.   Is it your opinion that prior to the seat being
 8   ejected, that there was no forces acting on the occupants
 9   that would cause Elsy to make contact with the child seat?
10   A.   No significant contact.  Now, as I said before,
11   this is a very violent event.  But there's no evidence that,
12   first of all, her entire body is falling onto the car seat.
13   There's simply no evidence of that.  Secondly, the car seat
14   didn't fail from that mechanism according to what we know
15   currently.  And, third of all, that she can't possess enough
16   kinetic energy to overcome the kinetic energy that is seen in
17   the full-scale tests.
```

****

> 6   She's right next to it. She's sitting in the
> 7   middle. Of course she's in contact with it. The question
> 8   is, is there significant contact? And I believe that's your
> 9   question.
> 10  So, of course, <u>there's going to be some</u>
> 11  <u>contact with it in either case, whether she's belted or</u>
> 12  <u>unbelted</u>. The only place she can get any -- probably any
> 13  reasonably measurable contact is if she's belted, <u>but even</u>
> 14  <u>that's not going to be high enough to make the seat fail</u>.

Smith Depo. at 23:7-17; 29:6-14, attached hereto as Exhibit 3 (emphasis added).

At today's hearing, Plaintiff's counsel pointed to testimony on page 35 of Mr. Smith's deposition to argue he was articulating Plaintiff's new theory. Smith was asked that <u>if</u> a two piece car seat could be forced off its base by 200 lbs. of force whether that would make it defective. Smith said that <u>if</u> that were the case, then it would be defective, but he went on to say that it would be "pure speculation," because "nobody knows what it was caused the car seat to unlatch in some mechanism nobody has been able to explain so far." Smith Depo at 35:14-36:2, Exhibit 3. "Pure speculation" does not meet the standards for an expert opinion under the federal rules, and as the Court noted at today's hearing, and off-the-cuff remark at an expert deposition does not satisfy the disclosure requirements.

C. **IT WOULD BE REVERSIBLE ERROR TO ALLOW PLAINTIFF TO ADOPT THIS DESIGN DEFECT THEORY THAT HE NEVER DISCLOSED PRIOR TO TRIAL**

It would be reversible error to allow Plaintiff to adopt a design defect theory that he has never previously been disclosed to Evenflo. Federal Rule 26(a)(2) requires a written report that includes " a complete statement of all opinions the witness will express and the basis and reasons for them." The whole purpose behind Rule 26 is to avoid unfair surprise at trial. None of Plaintiff's experts ever expressed an opinion in an expert report that the alleged design defect in the Embrace is that it has a propensity to be forced off its base by an unbelted passenger. The Ninth

Circuit has consistently held that undisclosed theories of liability are not admissible at trial. For example, In *U.S. Fidelity and Guaranty Co. v. Lee Investments LLC*, an insurance company sought rescission of an Employer's workers' compensation policy and succeeded at trial. *U.S. Fid. & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1131 (9th Cir. 2011). The Employer appealed, asking for reversal based on several of the district court's pretrial rulings, among other reasons. *Id*. at 1137. In one such ruling, the district court granted the insurance company's motion *in limine* precluding the Employer from arguing a new theory in its case that it had never introduced before: namely that the Broker involved was the agent of the Insurance Company. *Id*. The Ninth Circuit affirmed the district court's preclusion of the new theory, stating:

> The district court held that this theory was not fairly disclosed in discovery, that the defendants had not had an opportunity to conduct discovery on the theory or develop a defense, and that the defendants would be unfairly prejudiced if the court allowed the Employer to present the new theory at trial. The court did not abuse its discretion in declining to allow the belated assertion of an entirely new theory on the eve of trial, when discovery would have to be re-opened and the theory was of dubious merit

*Id*. at 1137-38. *See also Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 498-99 (9th Cir. 2009) (precluding new theories as to causation in a medical negligence claim because they were filed only four days before the close of discovery and ten weeks before trial, and they also presented a new theory as to a key element of Plaintiffs' claim).

In *Scott and Fetzer Co. v. Dile*, a manufacturer of a vacuum cleaner obtained a preliminary injunction against a retailer who had been selling rebuilt vacuum cleaners bearing the manufacturer's trademark. *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 672 (9th Cir. 1981). The retailer appealed the decision of the district court, alleging that the district court had abused its discretion when it allowed the manufacturer to present testimony by new witnesses, who were undisclosed in its discovery responses, including a brand new theory of the case, which was also undisclosed in discovery. *Id*. at 673. While the manufacturer consistently asserted that the retailer

had committed trademark infringement and unfair competition throughout, its theory to support these causes of action changed. In its answers to retailer's interrogatories, manufacturer had stated that the retailer committed trademark infringement and unfair competition "by using the trademark 'Kirby' in his advertising and by making various alleged misleading representations in his advertising and sales receipts." *Id*. However, after the hearing had already begun, the new theory manufacturer attempted to present was that that the retailer engaged in trademark infringement and unfair competition "by retaining the trademark 'Kirby' on the rebuilt vacuum cleaners where such rebuilt vacuum cleaners were not assembled in their entirety by Kirby with 'genuine' Kirby parts (manufactured by or for Kirby)." *Id*. It further attempted to present the theory that the retailer was "injuring [manufacturer]'s good name and reputation" since the retailer's rebuilt vacuums "were inferior to [manufacturer]'s new vacuums…." *Id*. The Ninth Circuit held that it was an abuse of discretion for the District Court to have allowed testimony on a new theory of the case. *Id.* It cited the Supreme Court to note that Rules 26 to 37, the discovery and deposition provisions of the Federal Rules, were intended to insure "proper litigation" by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Id*. at 674, citing *Goldman v. Checker Taxi Co*., 325 F.2d 853, 855 (7th Cir. 1963). It held that the district court had abused its discretion, since manufacturer was required to supplement its interrogatory responses under Fed. R. Civ. P. 26(E). *Id*.

In this case, not only has Plaintiff never previously disclosed an expert opinion that the design defect was the propensity of the carrier to be forced off the base, his experts have affirmatively rejected the notion that the carrier was forced off its base. Plaintiff's theory as recently as the filing of their trial brief a few weeks ago has been that the alleged design defect in the Embrace is the propensity of the release handle to inadvertently actuate due to contact with the red release lever. To allow Plaintiff to advance a new design defect theory at trial would be

contrary to Federal Rule of Civil Procedure 26, and contrary to controlling case law.  It would be reversible error.  Accordingly, Plaintiff's newly-minted design defect theory must be excluded.

### D.  CONCLUSION

For all the reasons set forth above, Plaintiff should be precluded from offering any testimony or argument that the defect in the design of the Embrace is the propensity of carrier to be detached from the base due to contacted with unbelted occupants.

DATED this 6th Day of October, 2015.

/s/ *Rosemary Missisian*
Rosemary Missisian, Esq.
WEINBERG, WHEELER, HUDGINS,
    GUNN AND DIAL, LLC
6385 S. Rainbow Blvd., Suite 400
Las Vegas, NV  89118
Telephone:     (702) 938-3838
Facsimile:     (702) 938-3864
rmissisian@wwhgd.com


Dan H. Ball, Esq.
Richard P. Cassetta, Esq.
Bryan Cave
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone:     314 259-2823
Richard.cassetta@bryancave.com
dhball@bryancave.com


Charles Lloyd Clay, Jr., Esq.
Chuck Clay & Associates
225 Peachtree Street, N.E., Suite 1700
Atlanta, GA  30303
Telephone:     (404) 949-8118
chuck@chuckclay.com

*Attorneys for Defendant*
*EVENFLO COMPANY, INC.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 6 th day of October, 2015, a true and correct copy of the foregoing **DEFENDANT EVENFLO COMPANY, INC.'S, MOTION TO PROHIBIT REFERENCE TO NEW DESIGN DEFECT THEORY** was served by operation of the Court's electronic filing system on the following counsel of record:

| | |
|---|---|
| Joseph L. Benson II, Esq.<br>BENSON & BINGHAM<br>11441 Allerton Park Drive, Suite 100<br>Las Vegas, NV  89135<br>joe@bensonbingham.com<br>*Attorneys for Plaintiffs* | Larry W. Lawrence, Jr., Esq.<br>Lawrence Law Firm<br>3112 Windsor Road, Suite A-234<br>Austin, TX  78703<br>lawrencefirm@aol.com<br>*Attorneys for Plaintiffs* |
| Ricardo A. Garcia, Esq.<br>Jody R. Mask, Esq.<br>Garcia Ochoa & Mask, LLP<br>820 S. Main St.<br>McAllen, TX  78501<br>ric@gomlaw.com<br>jody@gomlaw.com<br>*Attorneys for Plaintiffs* | |



      */s/ Rosemary Missisian*
      Rosemary Missisian
      WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC