JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276
BENSON & BINGHAM
11441 Allerton Park Drive, Suite 100
Las Vegas, NV 89135
(702) 382-9797, telephone
(702) 382-9798, facsimile
litigate@bensonbingham.com

LARRY W. LAWRENCE, ESQ.
Texas Bar No. 794145
LAWRENCE LAW FIRM
3112 Windsor Rd., Suite A234
Austin, TX 78703
(956) 994-0057, telephone
(956) 994-0741, facsimile
lawrencefirm@aol.com

RICARDO A. GARCIA, ESQ.
Texas Bar No. 7643200
JODY R. MASK, ESQ.
Texas Bar No. 24010214
GARCIA OCHOA MASK
820 S. Main Street
McAllen, TX 78501
(956) 630-2882, telephone
(956) 630-2882, facsimile
ric@gomlaw.com
jody@gomlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MATTHEW R. LINDNER, individually; as surviving spouse and legal heir of ELSY LETICIA GRANADOS-MARTINEZ, deceased; as surviving parent and legal heir of CAMILA LYNETE LINDNER, a deceased minor; and as Guardian Ad Litem of PAULINA GRANADOS-MARTINEZ, a minor; FERNANDO GRANADOS-MAGALLON, individually and as surviving spouse and legal heir of REFUGIO LETICIA MARTINEZ COSIO, <br><br> Plaintiffs, | CASE NO.: 2:10-cv-00051-LDG-VCF <br><br> **PLAINTIFFS' BRIEF ON ARGUMENT OF ALTERNATIVE THEORIES OF LIABILITY SUPPORTED BY THE RECORD AND LACK OF UNFAIR SURPRISE** |

200329

|   |   |
|---|---|
| vs. | ) |
|   | ) |
| FORD MOTOR COMPANY, a Delaware corporation; BERTHA MEZA d/b/a OROZCO AUTO SALES; EVENFLO COMPANY, INC., a Delaware corporation; BIG LOTS STORES, INC., an Ohio corporation; DOES I through XX, inclusive and ROE BUSINESS ENTITIES I through XX, inclusive, | ) ) ) ) ) ) ) |
|   | ) |
| Defendants. | ) |
|   | ) |

**PLAINTIFFS' BRIEF ON ARGUMENT OF ALTERNATIVE THEORIES OF LIABILITY SUPPORTED BY THE RECORD AND LACK OF UNFAIR SURPRISE**

COMES NOW, Plaintiffs, by and through their attorney of record, BENSON & BINGHAM, and submits their brief as follows:

### I.    Summary and Introduction

For over four years Evenflo has chosen to litigate a defense predicated on a technical theory upon which a reasonable jury could conclude presents nothing more than an alternative theory under which a jury could conclude the Embrace was unreasonably dangerously defective and caused the death of Camila. The law is clear that counsel can argue any theory of the case that is supported by the evidence and is certainly is not limited to only arguing that its own evidence supports its claims and defenses.

No continuance is warranted because there is no prejudice or surprise to the Defendant or their counsel that they could not have foreseen that their own defensive theory of the case would satisfy Nevada's legal standards for proving a product was unreasonably dangerously defective. Tellingly, the Court itself, figured out this problem with Evenflo's defense after less than 24 hours of involvement in this case. In addition, it *was* disclosed by Plaintiff's expert, John Smith, that one of the alternative bases on which the car seat was defective is that it should not have come detached from a foreseeable interaction with an occupant.

200329

## II. Nevada's Strict Product Liability Law

This is a diversity case subject to the substantive law of the State of Nevada. Under Nevada law, a product is defective in its design if, as a result of its design, the product is unreasonably dangerous. A product is unreasonably dangerous if it failed to perform in the manner reasonably to be expected in light of its nature and intended function, and was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community. *Primiano v. Cook*, 2010 U.S. App. LEXIS 8859, *8-9 (9th Cir. 2010). This is Nevada's "consumer expectations" test.

Nevada law is also clear that a plaintiff "need not produce direct evidence of a specific product defect or negate any alternative causes of the accident." *Stackiewicz v. Nissan Motor Corp., USA,* 100 Nev. 443, 686 P.2d 925, 927 (1984), *Smith v. Wolf Performance Ammunition*, 2015 U.S. Dist. LEXIS 64726, *13 (D. Nev. May 18, 2015); *see also Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010). Rather, any "unexpected, dangerous malfunction suffices" to demonstrate a product was unreasonably defective. *Stackiewicz* at 928; *Primiano* at 563.

Evenflo apparently intends to argue that their defense turns on Elsy Lindner's alleged failure to use a seatbelt. However, that is also not a defense under Nevada law unless the use was of the sort that the defendant could not reasonably foresee. Indeed, the Nevada Supreme Court was clear that "manufacturers can still be liable for a foreseeable misuse of a product in spite of an adequate warning." *Robinson v. G.G.C., Inc.*, 107 Nev. 135, 138, 808 P.2d 522 (Nev. 1991). The mere fact that the defendant may not intend the product to be used in a certain way does not mean that using it in that way is a legal misuse of the product and if the defendant should reasonably foresee that the product may be used in a way other than intended by him, such other use is not a misuse. *Crown Controls Corp. v. Corella*, 98 Nev. 35, 37, 639 P.2d 555, 557 (Nev. 1982); see also *Robinson*, supra.

Thus, the jury will be asked whether the evidence shows the product was unreasonably dangerously defective because it failed to perform in the manner reasonably to be expected in light of its nature and intended function, and was more dangerous than would be contemplated by the ordinary user. The jury is not limited only to a specific defect theory argued by the plaintiff, and is not restricted to assuming that an alleged misuse of a product is a defense unless the jury also concludes that misuse was unforeseeable.

The simple fact is that Evenflo has predicted its defense on presenting a theory of what happened in this case that reasonable jurors could conclude presents nothing more than an alternative theory of liability under which the jury could find the Embrace car seat was unreasonably dangerous and defective and caused the death of Camila. A reasonable jury could certainly conclude that an occupant seated next to this car seat is reasonably foreseeable. A reasonable jury could also certainly conclude that the possibility that this occupant is unrestrained by a seatbelt is not a use that Evenflo could not have reasonably foreseen. And a reasonable jury could certainly conclude that the Embrace car seat was unreasonably dangerous and did not perform as a reasonable consumer would expect *if* Defendant's theory of what happened were true and that the car seat failed because it was struck by an occupant in circumstances Evenflo could have foreseen.

### III.  A Party Can Argue Any Theory Supported By the Evidence. Litigants Are Not Limited to Relying Solely On Their Own Evidence.

Evenflo argues that Plaintiff cannot rely on Evenflo's own theory and evidence to support liability in this case. Evenflo is quite mistaken. To begin with, as noted above, Nevada law does *not* require a Plaintiff to prove *any* specific theory of defect, nor to negate alternative causes of an accident. *Stackiewicz* at 928; *Primiano* at 563. Thus, Nevada substantive law does not force the plaintiff to elect one specific theory of defect. If the evidence on the record supports a finding that

the product fails the consumer expectations test and caused the death or injury, then the defendant is liable.

An even more fundamental error in Evenflo's argument is its implied assertion that a Plaintiff can only rely on its own evidence to create a triable issue of fact. That is not and never has been the law. The jury will not be asked whether the car seat detached because Elsy Lindner's body pushed it off the base, or whether an object like the diaper bag or seat back actuated the relatively unprotected release lever. The jury *will* be asked whether the product was unreasonably dangerously defective under Nevada's strict product liability law under the factors and definitions discussed above. FED. R. CIV. P. 54(c) permits recovery on any theory supported by the evidence. *Haymond Napoli Diamond, P.C. v. Haymond*, 2004 U.S. Dist. LEXIS 17276, *42, 2004 WL 1925013 (E.D. Pa. Aug. 27, 2004).

More importantly, however, Plaintiff need not rely entirely on Evenflo's evidence. Evenflo was specifically told by Plaintiff's experts that this was an alternative theory of liability against Evenflo – most specifically by Plaintiff's biomechanics expert, Smith (dep. p 35):

> But I would say that if -- and I said it before. I'll say it again. If that was a reasonable failure mechanism for that, then anytime you had a really large person -- not really large. I mean, I'm 200 pounds. In a side impact, I could certainly apply more than 200 pounds to the car seat. And so unless they have a lot of evidence that that's how it's failing or they've run tests to show that's failing, there's no basis for their opinion. But if a 200-pound person in a side impact can break loose the car seat, there's a problem there, because it's a fully foreseeable and expected type of collision.
>
> Q.  Okay. So it would be your opinion that if a – any child seat, you know, two-piece construction, were able to detach from a 200-pound force being applied to it, then that would be a defective design?
>
> A.  I can't say that in any, because I'd have to look at the -- at all the specifics. But in this case, or in a lateral impact, I would say that's true.

Mr. Hoffman likewise explained that using a two part system for this seat rendered it defective because there were "a lot of reasons" for an "inadvertent release due to impact" that could cause this seat to release or separate from its base. (Hoffman dep. at p. 17).

Thus, there will be evidence that it is foreseeable that an adult occupant could move laterally into the car seat and cause it to detach under circumstances in which a reasonable consumer would expect it to remain affixed to its base. There is be evidence that if Evenflo's theory as to the cause of the seat's detachment is correct, that *too* is a defective condition. And there will be evidence from Evenflo's own corporate representative that it has the specific obligation to design its products to prevent failures under foreseeable circumstances:

> Q.   All right. And in that context, you would agree with me  that it should be the goal of Evenflo and manufacturers of child safety seats to be knowledgeable about those dangers and to anticipate design features that might mitigate against that, correct?
>
> A.   We need to be aware of what reasonably foreseeable risks  are and to mitigate against those reasonably foreseeable risks in our design and to ensure that our design has mitigated those risks through our testing.

(Kiser dep. at 187).

It *is* true that Plaintiff has primarily advanced the theory that the seat detached from its base because of inadvertent movement of a mass against the release lever rather than inadvertent detachment due to movement into the seat by a seated occupant. But Plaintiff has always taken the position that both of those theories of what occurred in this case would support a jury's conclusion that the Embrace car seat was unreasonably dangerous and caused the death of Camila. Plaintiff has certainly favored the lever actuation theory because it is far more consistent with the physical evidence and laws of physics and because it is the product failure theory that Plaintiff's own experts have concluded is more likely. But should the jury decide that Evenflo is correct that the seat failed because it was struck by a seated occupant's body Plaintiff's experts opined that too would mean the seat was defective, and Plaintiff has never stated otherwise.

### IV. There Is No Surprise That Would Warrant A Continuance. Evenflo Is Presumed To Know Nevada Law and The Facts of Its Own Defense.

As noted above, this alternative theory of liability based on Evenflo's own theory of the case is not something Evenflo has just discovered. Evenflo was aware certainly by the time of Smith's deposition – as quoted above – that Plaintiff's would prove the seat was defective even if the jury agreed that Elsy Lindner's body hit the seat causing it to detach from its base. On that basis alone, the Court should refuse any late request for a continuance. There is nothing surprising about this alternative theory of liability.

More troubling is the notion that Evenflo could somehow be surprised that its own defense in the case was proving up facts that would support an alternative theory of liability under Nevada's strict product liability law. Evenflo cannot claim to have been surprised as to the facts of its own defense. And it is presumed to have known the law when it chose to pursue this defense more than four years ago. Nothing about this defense actually supporting an alternative basis for liability can reasonably said to be a surprise that would justify a continuance of the trial date at this late stage. Indeed, the Court - which just took over responsibility for this case yesterday - immediately noticed that Evenflo appeared as though it were defending itself into an alternative theory of liability.

Evenflo should have recognized long ago that its theory of this case could reasonably be argued as also satisfying the test for an unreasonably dangerous defect. That conclusion is self-evident from the law and the facts as Evenflo has sought to develop them. Evenflo's failure to see the peril in this "defense" is not the fault of anything done by the Plaintiff. Thus, no continuance is warranted.

. . . .

. . . .

. . . .

7

### V. Any Theory That Camila Would Have Died Regardless of the Detachment and Ejection Of The Infant Seat *Directly* Contradicts The Opinions Disclosed from Evenflo's Experts.

Evenflo's own expert, Dr. Banks, disclosed his opinions in a report dated January 31, 2011. This report sets forth that Camila had remained in the vehicle she would not have experienced her reported injuries. It states the following:

> Camila received fatal injuries as a result of contact with Elsy (as she was being ejected), contact with vehicle structures during ejection, or contact with ground surfaces after ejection.
>
> Had Elsy Leticia Granados-Martinez been wearing the available lap belt, and assuming that Camila was strapped to the child seat, Elsy's interaction with the child seat would have been of less severity, and neither she nor Camila would have been ejected from the vehicle. **If both were properly belted, neither would have experienced their reported injuries** (*emphasis added*).  See Exhibit 1.

Subsequently, Dr. Banks made a supplemental report and made no changes nor did he disclose any new opinions regarding Camilla's injuries. At no time has any theory been disclosed by Banks or any other Evenflo expert that states, implies or infers that Camilla would have died even if she had remained in the vehicle. See Exhibit 2.

Additionally, Evenflo's expert William Van Arsdell testified in his deposition taken on July 4, 2011, absent Elsy, the mother, hitting the car seat, it would not have separated from the base and thus remained in the vehicle. *Van Arsdell Deposition p. 154.*

### CONCLUSION

Evenflo should not be allowed at this late stage to now opine Camila would have died in this crash whether she was ejected or not. No such opinion has ever been disclosed previously.

DATED this 6th day of October, 2015.        BENSON & BINGHAM

        /s/ Joseph L. Benson II        .
JOSEPH L. BENSON II, ESQ.
Nevada Bar No. 7276
Attorneys for Plaintiffs

8

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFFS' BRIEF ON ARGUMENT OF ALTERNATIVE THEORIES OF LIABILITY SUPPORTED BY THE RECORD AND LACK OF UNFAIR SURPRISE** was made this date by electronic service to the following:

| | |
|---|---|
| Rosemary Missisian, Esq.<br>WEINBERG, WHEELER, HUDGINS,<br>    GUNN AND DIAL, LLC<br>6385 S. Rainbow Blvd., Suite 400<br>Las Vegas, NV 89118<br>Attorney for Defendant,<br>Evenflo Company, Inc. | Charles L. Clay, Jr., Esq.<br>CHUCK CLAY & ASSOCIATES<br>225 Peachtree Street, N.E., Suite 1700<br>Atlanta, GA 30303<br>Attorney for Defendant,<br>Evenflo Company, Inc. |
| Dan H. Ball, Esq.<br>Richard P. Cassetta, Esq.<br>BRYAN CAVE<br>211 N. Broadway, Suite 3600<br>St. Louis, MO 63102<br>Attorney for Defendant,<br>Evenflo Company, Inc. | Larry W. Lawrence, Jr., Esq.<br>LAWRENCE LAW FIRM<br>3112 Windsor Road, Suite A-234<br>Austin, TX 78703<br>Attorney for Plaintiffs |
| Ricardo A. Garcia, Esq.<br>Jody R. Mask, Esq.<br>GARCIA OCHOA MASK<br>820 S. Main Street<br>McAllen, TX 78501<br>Attorney for Plaintiffs | |

DATED this 6th day of October, 2015.

                                          /s/ Amy L Sulanke                      .
                                          An employee of BENSON & BINGHAM